Fortune C. Brown et al., Executors, etc., Respondents, *v.* Warren C. Clark et al., Appellants.

Where the attestation clause to a will recites all the facts necessary to constitute a due execution and publication, and is signed by two witnesses, and it appears that the testator executed the will in the presence of the witnesses, that they were requested by some one to become witnesses to a will, and that they attended at the time in pursuance of such request, the fact that the witnesses when examined are unable to recollect that they signed as witnesses at the request of the testator does not authorize a finding that the statute requirements were not observed. In the absence of evidence contradicting the recitals this lack of memory does not rebut the presumption of due publication arising from the attestation clause and the other circumstances.

The provision of the Revised Statutes (2 R. S., 64, § 44) declaring the will of an unmarried woman is revoked by her subsequent marriage, is not abrogated by the subsequent statutes conferring upon married women testamentary capacity, and thus taking away the reason of the rule at common law.

The courts cannot dispense with a statutory rule because it appears that the policy upon which it was established has ceased.

M., a married woman, executed in due form a codicil which, after referring to and describing a will executed by her before marriage, contained the following clause: "I do hereby republish, reaffirm and adopt the aforesaid instrument as my present will in like manner as if so executed by me, but modified pursuant to this codicil, which in connection with and amendment of my said will I now publish and declare together as constituting my last will and testament." The will was present when the codicil was executed, and the attention of the witnesses was called to it, and the testatrix at the time declared the instrument to be "a codicil to her last will and testament, and a reaffirmation of the latter." *Held,* that the execution of the codicil was a republication of the will; and that

it and the codicil together were to be considered as the will of the testatrix.

*It seems*, that a codicil executed with the formalities required by statute for the execution of wills operates as a republication of the will to which it refers, so far as not changed by the codicil.

This rule was not changed by the provision of the Revised Statutes (2 R. S., 63, § 40) in reference to the execution of wills.

(Argued April 25, 1879 ; decided May 20, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a decree of the surrogate of the county of Monroe, which denied probate to an instrument presented to him as the last will and testament of Mary J. Clark Proctor, deceased. (Reported below, 16 Hun, 559.)

The instrument in question was executed by the deceased, then Mary J. Clark, on August 25, 1873. She subsequently married Mr. Proctor. After her marriage, and on December 7, 1876, she executed a codicil. She died October 1, 1877.

The material facts in reference to the execution of the will and the codicil are stated in the opinion.

*J. C. Cochrane*, for appellants. The burden of proof was upon the proponents to show a substantial compliance with all the requirements of the statute. (*Lewis* v. *Lewis*, 1 Kern., 220; *Gilbert* v. *Knox*, 52 N. Y., 125;. *In re Will of Kilburn*, id., 517.) If the will of the testatrix had any vitality, it was revoked by her marriage after making it. (2 R. S., 64, § 39; *Lathrop* v. *Lathrop*, 4 Hun, 213; *Loomis* v. *Loomis*, 51 Barb., 257.)

*H. R. Selden*, for respondents. The will of the testatrix was not revoked by her subsequent marriage. (2 R. S., 64, § 44; Laws 1849, chap. 375; Laws 1848, chap. 200; *Morton* v. *Onion Ex.*, 45 Vt., 152; 4 Kent's Com., 527; 7 Hill, 355; *Lathrop* v. *Dunlop*, 4 Hun, 213; 63 N. Y., 610.) The execution of the codicil and the presence of and reference to the original will at the time of such execution constitute a republication of the original will subsequent to her marriage.

(*Allen* v. *Maddock*, 11 Moore P. C. Cas., 427; *Archerly* v. *Vernon*, 1 Comyn, 381; 1 Ves. Jr., 497; 3 Bro. P. C., 107; *Piggott* v. *Waller*, 7 Ves., 98; *Doe dem. Williams*, 1 C. & M., 42; *Guest* v. *Willasey*, 2 Bing., 429; 3 id., 614; *Gordon* v. *Ld. Ray*, 5 Sim., 274; *Utterton* v. *Robins*, 1 A. D. & E., 423; *Goodtitle* v. *Meredith*, 2 Maule & Sel., 6; *Potter* v. *Potter*, 1 Ves. Sen., 442; Powell on Devisees, 3d Am. ed., 440; *Habergam* v. *Vincent*, 2 Ves. Jur., 228; 4 Deseau, 622, 623, 628, 629; *Smart* v. *Priejeau*, 6 Ves., 565; *Bizzy* v. *Flight*, 3 Law Rep. Ch. Div.; *Brady* v. *Cubitt*, 1 Doug., 31; 1 Redf., 371, § 6; *Van Courtland* v. *Kipp*, 1 Hill, 590, 593, 594; *Kip* v. *Van Courtland*, 7 id., 346, 349, 350; *Howland* v. *Union Theo. Sem.*, 5 N. Y., 194; *Van Alstyne* v. *Van Alstyne*, 28 id., 375; Dayton on Surr., 143; 1 Redf. on Wills, 368, § 3; 371, § 6; *Bond* v. *Seawell*, 3 Burr., 1775; *Fonnele* v. *Hall*, 4 N. Y., 145; *Church* v. *Brown*, 21 id., 331; Powell on B. [Am. ed.], 54, 55; 2 R. S., 63, § 40; 1 R. L., 1813, 364, § 2; 1 Vict. Ch. 26, § 9; 14 Statutes at Large, 489; 1 Wms. on Exrs., 55; Jarman on Wills, 758; *Allen* v. *Maddock*, 11 Moore's P. C. Cas., 427; Wms. on Exrs. [3d Am. ed.], 80; *Doe* v. *Evans*, 1 Ch. & Muson, 42; *In the goods of Smith*, 2 Curties, 796; *In the goods of Countess of Durham*, 3 id., 57; *In the goods of Dickens*, id., 60; *In the goods of Wellesford*, id. 77; *In the goods of Claringbull*, 3 Notes on Cases in the Ecclesiastical Ct., 1; *In the goods of Bacon*, id., 644; *In the goods of Smart*, 4 id., 38; *In the goods of St. Clair*, 3 Curties, 746; *In the goods of Duff*, 4 Notes of Cases, 474; *Jorden* v. *Jorden*, 2 id., 388; *Burton* v. *Newbury*, 1 Law Rep. Ch. Div., 234.)

Andrews, J.　The evidence justifies the conclusion of the surrogate that there was a due execution of the will of August 25, 1873. The will was drawn by Mr. Clark, who was a lawyer by profession, and was executed by the testatrix under his supervision. She was his adopted daughter, and sole legatee under his will. When her will was executed she had little if any property of her own, and her will was

made to provide for the disposition of the estate which she would receive under the will of Mr. Clark in the event of her surviving him. In substance the two wills constituted a scheme for the disposal of the property of Mr. Clark after his death and the death of the testatrix. The attestation clause is full and recites all the facts constituting a due execution, and is signed by two witnesses. The witnesses were not lawyers and were not, so far as appears, conversant with the statute requirements for the execution of wills, and when examined, were unable to state that they signed the will as witnesses at the request of the testatrix, or that she at that time declared it to be her will. But it is undisputed that the testatrix executed the will in their presence and that they were requested by some one to become witnesses to a will, and that they attended on the occasion of the execution of the will in pursuance of such request. There is no evidence contradicting the recitals in the attestation clause. Neither of the witnesses deny that it contained a true account of what occurred when the will was executed. The proof was taken five years after its execution. Mr. Clark was then dead and no persons were living who were present at the execution except the two witnesses. The case is, therefore, one where the attestation clause recites all the essential acts to constitute a due execution and publication of the instrument as a will, and the other circumstances tend to corroborate the truth of the recitals. The witnesses, after a lapse of several years, fail to recollect affirmatively the facts attested by them over their own signatures. The mere non-recollection of witnesses under these circumstances, would not justify a finding that the statute requirements were not observed. Their lack of memory does not rebut the presumption of due publication arising from the attestation clause and the other circumstances. (*Brinckerhoof* v. *Remsen*, 8 Paige, 499; S. C., 26 Wend., 332; *In re Kellum*, 52 N. Y., 517.)

We concur in the conclusion reached by the surrogate that the will was revoked by the subsequent marriage of

the testatrix. It was the rule of the common law that the marriage of a woman operated as an absolute revocation of her prior will. (*Force and Hembley's Case,* 4 Co., 61.) The reason of the rule is stated by Lord Chancellor Thurlow in *Hodsden* v. *Lloyd* (2 Bro. Ch., 534). He says: "It is contrary to the nature of the instrument which must be ambulatory during the life of the testatrix; and as by the marriage she disables herself from making any other will, this instrument ceases to be of that sort, and must be void." The rule that the marriage of a *femme sole* revoked her will was made a part of the statute law of this State by the Revised Statutes. (2 R. S., 64, § 44.) The language of the statute, that the will of an unmarried woman shall be deemed revoked by her subsequent marriage, is the declaration of an absolute rule. The statute does not make the marriage a presumptive revocation which may be rebutted by proof of a contrary intention, but makes it operate *eo instanti* as a revocation. (4 Kent, 528.) It is claimed by the contestants that the testamentary capacity conferred upon married women by the recent statutes in this State takes away the reason of the rule of the common law, and that upon the maxim *cessante ratione legis, cessat lex ipse,* the rule should be deemed to be abrogated. Upon the same ground it might have been urged at common law that the marriage of a *femme sole* should only be deemed a revocation or suspension of her prior will during the marriage, and that when the woman's testamentary capacity was restored by the death of her husband, leaving her surviving, the will should be revived; but the contrary was well settled. (*Force and Hembley's Case;* 1 Jarman, 106; 4 Kent, 598.) But the courts cannot dispense with a statutory rule because it may appear that the policy upon which it was established has ceased. The married women acts confer testamentary capacity upon married women, but they do not undertake to interfere with or abrogate the statute prescribing the effect of marriage as a revocation. It was quite consistent that the

Legislature should have intended to leave the statute of 1830 in force although the new statutes took away the reason upon which it was based. The Legislature may have deemed it proper to continue it for the reason that the new relation created by the marriage would be likely to induce a change of testamentary intention, and that a disposition by a married woman of her property by will should depend upon a new testamentary act after the marriage.

The remaining question is as to the legal effect of the codicil of December 7, 1876. This was executed after the marriage of the testatrix and refers to the will by its date and the names of the attesting witnesses, and in the body of the codicil the testatrix declares her intention thereby to republish, reaffirm and adopt the will as modified by the codicil as her present will, in the same manner as if then executed by her, and following this declaration is this clause: "Which" (codicil) "in connection with and amendment of my will I now publish and declare together as constituting my last will and testament." The codicil was executed with the formalities required by the statute. It was signed by the testatrix in the presence of two witnesses and was attested by them in her presence at her request, and she, at that same time, declared the instrument to be "a codicil to her last will and testament and a reaffirmation of the latter." The original will was present when the codicil was executed and the attention of the witnesses was called to it, and one of them examined and identified it. The evidence leaves no room for doubt that the main purpose of the testatrix in making the codicil, was to re-establish the will which had been revoked by her marriage. The inference from the proof is that she understood the will had been revoked by her marriage. The codicil made some provision for a brother of the testatrix not contained in the will, but the paramount intention of the testatrix in executing the codicil, was, as appears by the codicil and the extrinsic circumstances, to reaffirm the disposition of her property made by the will so that the bulk of her estate should go

according to its provisions. The contestants claim that the intention of the testatrix to reaffirm the will cannot take effect for the reason that there was no republication of that instrument after her marriage, and that what occurred at the time of the execution of the codicil was a publication of that instrument only and did not operate to revive the will or incorporate its provisions with those of the codicil. The general doctrine is well settled that a codicil executed with the formalities required by statute for the execution of wills, operates as a republication of a will so far as it is not changed by the codicil. (*Ackerly* v. *Vernon*, 1 Comyn, 381; *Barnes* v. *Crowe*, 1 Ves. Ch., 486; *Mooers* v. *White*, 6 John. Ch., 375; *Van Cortlandt* v. *Kip*, 1 Hill, 590; S. C., 7 id., 346.) In *Van Cortlandt* v. *Kip* (1 Hill, 593), COWEN, J., said : "It seems to me that at this day it would be a violation of all reliable authority to deny that a codicil, duly attested to pass real estate would, *per se*, whether it relates to real or personal property, operate as a republication of a devise, unless the testator declares that he does not intend that it shall have that effect." This doctrine was attended with important consequences. By the English law prior to the Wills Act (Vict. 1, chap. 26), a testator must have been seized of the lands devised at the time of making his will, and after acquired lands would not pass under a residuary devise, and this was also the rule in this State prior to the Revised Statutes. (4 Kent, 601.) But the execution of a codicil was held to make the will speak as of the time the codicil was executed and to extend a general devise to lands acquired intermediate the making of the will and codicil. The cases in 1 Ves., 486, and 1 Hill, 590 (*supra*), proceeded upon this doctrine. In each of these cases lands acquired by the testator after making the will and before the execution of the codicil were held to pass under the will. It was not essential to the application of this rule that the codicil should be annexed to the will or express an intention to republish the will or refer to the devise. It was sufficient if the codicil was executed with the formalities required for the execution of a will of lands. (*Goodtitle* v. *Merideth*, 2 M. &

S., 6; *Jackson* v. *Holloway*, 7 John., 394; *Jackson* v. *Potter*, 9 id., 312.) The Statute of Frauds (29 Charles II) enacted that all devises of lands shall be in writing and signed by the devisor or by some person in his presence and by his express directions, and shall be attested and subscribed in his presence by three or four credible witnesses, or else they shall be void. Prior to 1830 this statute had been substantially re-enacted in this State and governed the execution of wills here. (2 R. L., chap. 23, § 2 ) It will be observed from the cases cited that the attestation of a codicil by the requisite number of witnesses was deemed a compliance with the statute so as to make the will operate upon after acquired lands although they were not mentioned in the codicil and there was no express republication of the will. The attestation of the codicil is, according to the decisions, an attestation of the will within the meaning of the statute of Charles II. So, also, it was held that a will revoked by marriage or otherwise was revived by the execution of a codicil. (*Lord Walpole* v. *Lord Oxford*, 3 Ves , 402; *Neate* v. *Percival*, 2 No. Cas., 406; 1 Jarman, 187; 1 Redfield on Wills, 367.) This subject is now regulated in England by the twenty-second section of the Wills Act (1 Vict. C., 26), which provides in substance that no will or codicil which shall in any manner be revoked shall be revived otherwise than by the re-execution thereof or by a codicil executed in the manner prescribed by the act and showing an intention to revive the same.

Upon the authorities cited, it is clear that under the law in this State as it stood prior to 1830 there was a valid republication of the will in question by the execution of the codicil of December 7, 1876. The Revised Statutes changed, in several respects, the ceremonies to be observed in the execution of wills, and among other things it is expressly required that the testator shall at the time of making or acknowledging his subscription to the will, declare the instrument to be his last will and testament. (2 Rev. Stat., 63, § 40, sub. 3.) There is nothing in the statute indicating that it was intended to change the rule that a codicil duly

executed was a republication of the will. The codicil in the case of *Van Cortlandt* v. *Kip* (1 Hill, 590), was executed after the present statute was enacted. It referred to the will executed in 1824, but did not in terms republish it, and made no reference to the lands acquired by the testator after the will was made, but the court held, in accordance with the law which existed before the Revised Statutes were passed, that the codicil was a republication of the devise in the will, and that the after acquired lands passed to the surviving devisee. The Revised Statutes did not affect the construction of wills made before the chapter relating to wills took effect. (2 Rev. Stat., 68, § 75.) This case seems to be a direct authority that the due execution and publication of a codicil is, under the Revised Statutes as it was prior thereto, a republication of the will to which it refers. The codicil in this case refers to the will and expressly adopts and reaffirms it. The testatrix by publishing the codicil, published the will, which was clearly identified by the reference in the codicil and the extrinsic proof. It is established by a long line of authorities that any written testamentary document in existence at the execution of a will may, by reference, be incorporated into and become a part of the will, provided the reference in the will is distinct and clearly identifies, or renders capable of identification, by the aid of extrinsic proof, the document to which reference is made. I will cite a few of them : (*Habergham* v. *Vincent*, 2 Ves. 228; *Smart* v. *Prujean*, 6 id., 565; *Williams* v. *Evans*, 1 Cromp. & Mee., 42; *Allen* v. *Maddock*, 11 Moore's P. C. C., 427; *Burton* v. *Newbury*, 1 L. R. Ch. Div., 234; *Tonnele* v. *Hall*, 4 Com., 145.) In Williams on Executors, page 97, it is said : "If a testator in a will or codicil or other testamentary paper duly executed refers to an existing unattested will or other paper, the instrument so referred to becomes part of the will;" and Jarman says (1 Jarm., 78): "A codicil duly attested communicates the efficacy of its attestation to an unattested will or previous codicil so as to render effectual any devise

of a freehold estate which may be contained in such prior unattested instrument;" and further on, speaking of the incorporation of documents by reference in the will, he says this is permitted "without violating the principle of the enactment, which requires an attestation by witnesses, the testator's intention to adopt the contents of such instrument being manifested by a will duly attested" (p. 83). In this case if the will of Mrs. Proctor had been an unattested instrument, it would, upon the authorities, have been incorporated with and made a part of the testamentary instrument originally executed by reason of the reference to it in the codicil.

I am of opinion that the publication of the codicil was a publication of the will, and that both papers together are to be considered as the will of the testatrix. There was no proof to sustain the allegations of undue influence or want of testamentary capacity in the testatrix when it was executed. The only question before us is one of law upon substantially uncontroverted facts, and the order of the General Term reversing the decree of the surrogate and remitting the proceedings to him with directions to admit the will to probate should be affirmed. (*Hoysradt* v. *Kingman*, 22 N. Y., 372; *Gilbert* v. *Knox*, 52 id., 125.)

All concur.

Order affirmed.