In the Matter of Proving the last Will and Testament of
VIRGINIA S. KAUFMAN, formerly VIRGINIA S. DILLON,
Deceased.

*Court of Appeals, March 1, 1892.*

1. *Will. Marriage.*—The subsequent marriage of a widow revokes her
will.

Appeal from judgment of the supreme court, general term,
first department, reversing decree of surrogate refusing pro-
bate to an alleged will.

*Henry J. Meinhard*, for appellant.

*Morris S. Wise*, for respondent.

GRAY, J.—This will was made by the deceased while she
was the widow of one Dillon. She subsequently intermar-
ried with Kaufman and died, leaving him surviving. The
executor appointed in this will offered the instrument for
probate ; but was opposed in his proceedings by Kaufman,
who claimed that the will had been revoked by testatrix'
marriage with him, and who has been sustained in that claim
by the surrogate and the general term. In their decisions
those courts were clearly right, and we should say nothing
here, in disposing of this appeal, were it not for the state-
ment that there is no authoritative decision by this court upon
the particular question. We should suppose that the case of
Brown *v.* Clark, 77 N. Y. 369 was a sufficient authority in
point ; although the testatrix in that case was a woman who
had never been married at all. For any discussion as to the
operation of the acts passed by the legislature of this state

in relation to married women and their effect in conferring upon them testamentary capacity, reference may be had to that case.

The appellant attempts an argument upon the meaning to be given to the words " unmarried woman " in the statute, and seeks to give substance to it by reference to some cases arising upon the construction of wills and where the discussion bore upon the presumed intention of the testator in his gifts or limitations of property. But such cases can have no influence upon the question of what is accomplished by the Revised Statutes in the provision that " a will executed by an unmarried woman shall be deemed· revoked by her subsequent marriage." Pt. 2, chap. 6, tit. 1, art. 3.

It was a recognition of the common-law rule which, in the operation of the statute upon the civil status of the married woman, is unaffected by the enlargement of her legal capacities. A tcommon law the ·feme sole, in marrying, merged her legal identity in that of her husband. In the unity of person, caused by the marriage relation, the wife lost the control of her property, and hence of her will. Under our statutes that identity of person is only affected, and separate legal capacity is only conferred upon the wife to the precise extent mentioned in the enabling acts. As we have repeatedly held, the common law has been no further abrogated than is read in the statute. Nothing has been enacted which alters the provision that her will is revoked by a subsequent marriage. There is sufficient reason for the continuance of the rule in the changed relations of the woman. Her new status as wife induces the presumption of a new testamentary intention, and demands a new testamentary act. The unmarried woman referred to by the statute must be defined according to that rule of statutory construction which requires that the words used in legal enactments shall be understood and taken in their ordinary and familiar significance. So read, the unmarried woman of the statute is the woman who is not in a state of marriage. That the legisla-

ture could have had any other idea is both inconceivable and unreasonable.

The judgment below should be affirmed, with costs to the respondent as against the appellant.

All concur.