In the Matter of the Probate of the Last Will and Testament
of MARY E. McLARNEY, Deceased; JAMES E. McLARNEY,
Appellant; JAMES J. PHELAN et al., Executors, et al.,
Respondents.

1. WILL EXECUTED BY MARRIED WOMAN — REVOCATION. A will
executed by a married woman is not revoked by her subsequent remarriage
after an intervening widowhood.

2. MARRIED WOMEN'S ACT OF 1849 — 2 R. S. 64, § 44. The provision
of the act of 1849 (Ch. 375) enabling a married woman to devise property
"in the same manner and with like effect as if she were unmarried," does
not have the effect of extending the rule that "a will executed by an
unmarried woman shall be deemed revoked by her subsequent marriage"
(2 R. S. 64, § 44) to the case of a will executed by a married woman, who
subsequently became a widow and remarried.

*Matter of McLarney*, 90 Hun, 361, affirmed.

(Argued June 11, 1897; decided October 5, 1897.)

APPEAL from a judgment of the General Term of the
Supreme Court in the first judicial department, entered
January 6, 1896, which affirmed a decree of the Surrogate's
Court of the city and county of New York admitting a will
to probate.

The facts, so far as material, are stated in the opinion.

*James P. Campbell* and *Joseph H. Fargis* for appellant.
The right or power to dispose of one's property by will is not
a natural right, but is given by statute and entirely derived
from and granted by the state. (L. 1849, ch. 375, § 1; 2 R.
S. ch. 6, art. 1.) The statute of 1849, so far as it gave power
to married women to devise their real and personal property
in the same manner and with like effect as if they were
unmarried, was not repealed expressly or by implication by
chapter 782 of the act of 1867. (*Bowen* v. *Lease*, 5 Hill,
221; *In re Curser*, 89 N. Y. 401; *Wallace* v. *Bassett*, 41
Barb. 92.) The Revised Statutes as amended and the act of
1849 give to married women the same and no greater testa-
mentary power over their property than they give to unmar-

ried women, and also give them both additional power to revoke, by the methods prescribed by law, a will once made in the exercise of the granted power. (*White* v. *Wager*, 25 N. Y. 334; *In re Kaufman*, 131 N. Y. 620.) The will of a married woman as well as that of an unmarried one is, under the Revised Statutes, the act of 1849, and chapter 782 of the act of 1867, amending the Revised Statutes, revoked by a marriage contracted subsequent to the execution of the will. (*Cotheal* v. *Cotheal*, 40 N. Y. 405.) The Revised Statutes, as amended by the act of 1867 and the act of 1849, make a harmonious and complete system of law relating to the execution and revocation of wills, and give to all persons except minors under a certain age and persons of unsound mind power to dispose of property by will, and those parts of them which relate to the revocation by the marriage of women are consistent and reasonable and leave no contingency unprovided for. (*Loomis* v. *Loomis*, 51 Barb. 259; *Lathrop* v. *Dunlop*, 4 Hun, 213; 63 N. Y. 610; *Brown* v. *Clark*, 77 N. Y. 373; *In re Kaufman*, 131 N. Y. 620; *Swan* v. *Hammond*, 138 Mass. 45.)

*Abel Crook* for respondents. The will was not revoked by the subsequent marriage of the testatrix. (2 R. S. 64, § 44.) The Revised Statutes provide the only way in which a will can be revoked and continue the declaration that the will of an unmarried woman shall be deemed revoked by her subsequent marriage. No such declaration exists therein relative to the will of the married woman. (2 R. S. ch. 6, tit. 1, §§ 42–44, 47, 49.) The word "unmarried" in the statute means a person not in a state of marriage. (*In re Kaufman*, 131 N. Y. 620, 621; *Swan* v. *Hammond*, 138 Mass. 45.) The New York statute of 1849 is an enabling act, authorizing married women to make a deed or will, and this is the power under consideration. It does not contemplate any revocation of a married woman's will by her subsequent marriage. (*White* v. *Wager*, 25 N. Y. 333; *Cotheal* v. *Cotheal*, 40 N. Y. 405; *Brown* v. *Clark*, 77 N. Y. 373; *Swan* v. *Hammond*, 138

Mass. 45 ; *In re Kaufman*, 131 N. Y. 620 ; *In re Burton*, 25 N. Y. Supp. 824 ; *In re Comassi*, 107 Cal. 1 ; Code Civ. Pro. § 1970.)

O'BRIEN, J.   The decree of the surrogate admitting the will of the deceased to probate is questioned upon one ground only, and that is, that the will was revoked prior to the death of the testatrix.

The will was made on the 23d day of July, 1884, and the deceased was then a married woman, the wife of one Brophy, who died on the 29th of January, 1889.   On the 5th of February, 1894, the testatrix, being then a widow, married the contestant James E. McLarney, and she died on the 19th of April following the marriage.   There was no issue of either marriage.

When the will in question was made, the deceased was a married woman living with her husband, and the contention is that as she subsequently became a widow and remarried, her last marriage operated to revoke the will previously made.

That the deceased made a valid will in writing is not disputed, and in order to show a revocation the burden was upon the contestant to bring the case within some provision of the statute which defines the cases in which written wills are deemed to be revoked.   The statute provides that " a will executed by an *unmarried* woman shall be deemed revoked by her subsequent marriage."   (§ 44.)   The deceased was not an unmarried woman when she made the will.   She was a married woman who subsequently became a widow and remarried.   The case is not, therefore, within the rule or the reason of the rule that the will of an unmarried female is revoked by her subsequent marriage.   The statute on this subject is simply declaratory of the common law.   The marriage as a general rule vested the husband with the title to the property of the wife and she lost her capacity to dispose of it by will or otherwise.   Since a testamentary instrument from its very nature can operate only after death and is subject to change during life, it was wholly inconsistent with the relations of husband and wife as they existed at common law when made

by the wife before marriage. An instrument which disposed of her property after death, and which she was incapable of changing or revoking during coverture, could not legally exist under the rules of law that governed the marriage relations. It was supposed to be destructive of that complete unity of husband and wife which was the theory of the common law, and, therefore, upon her marriage it was deemed to be completely revoked. The reason of the rule was very clearly stated by Lord Chancellor THURLOW in *Hodsden* v. *Lloyd* (2 Bro. Ch. 534), as follows : " It is contrary to the nature of the instrument which must be ambulatory during the life of the testatrix, and as by the marriage she disables herself from making any other will, this instrument ceases to be of that sort, and must be void." This rule was incorporated in our statute law (2 R. S. 64, § 44) at a time when a married woman was incapable of making a will, and, of course, it was not intended to have any application whatever to testamentary instruments made during coverture. Since the disabilities of married women to dispose of property by will have been removed in this state by legislation the reason of the rule no longer exists though it remains a part of the statute law. It has been held by this court that it was not abrogated by the subsequent legislation conferring testamentary capacity upon married women and removing the reason of the rule at common law. The courts cannot dispense with a statutory rule merely because it appears that the policy upon which it was established has ceased. The legislature might very properly remove it from the statute book by repeal, but in the meantime it cannot be disregarded by the courts. (*Brown* v. *Clark*, 77 N. Y. 369.)

But it would seem to be clear that we ought not to extend the operation of an ancient rule when all the reasons upon which it was founded have passed away or apply it to a case which was not originally within its terms or its general policy. After the long struggle in the courts, where it was assailed as a useless relic of the past that had been swept away in the current of modern legislation, there is no good reason for giv-

ing it new life and vigor by deciding that it is still not only potent enough to annul the will of an unmarried female but that of a married woman as well.

The courts of this state when dealing with the subject of wills and their revocation have always adhered closely to the terms of the statute. This is illustrated not only by the case above cited, but by others, notably where it was held that the provision of the statute which revokes a will in favor of an after-born child had no application to the will of a married woman under the act of 1849. (*Cotheal* v. *Cotheal*, 40 N. Y. 405.) So, also, in a more recent case it was held that a will made by a widow was the testamentary act of an unmarried woman and revoked by her subsequent *marriage*. (*In re Kaufman*, 131 N. Y. 620.)

In the case at bar the testatrix could have revoked her will at any time before her death or could have made a new will, and hence none of the reasons upon which the statute was based have any application to this case.

The learned counsel for the contestant admits that he cannot succeed in this appeal unless the language of the act of 1849 removing the disabilities of married women sustains his contention. By that statute a married woman is enabled " to convey and devise real and personal estate * * * *in the same manner and with like effect as if she were unmarried.*" The argument is that since the will of a married woman is to be made in the same manner and with *like effect* as if she were unmarried, the instrument must carry with it all the incidents and qualities that pertain to the will of a *feme sole*, including the possibility of revocation by a subsequent marriage.

This, we think, would be straining the words of the statute to engraft upon it an ancient rule of revocation that never had any application to the class of wills therein mentioned. The purpose of the act was to enable a married woman to make a will, and it had no reference to methods of revocation. A will has no effect whatever until death, and the words " like effect " relate to the instrument after it becomes effective by

death.	The meaning of the words is that when the will of a married woman becomes operative by her death it shall have the same effect, that is, the same disposing power and legal operation as an instrument for the transfer of the title to property, that it would had she never been married.	Nothing was said or implied with respect to revocation.	That subject was left to the general rules of law applicable to all wills.	If the legislature intended that her will should be deemed revoked in case of a second marriage, it would, no doubt, have said so.	In the absence of some positive law such a result cannot be engrafted upon a statute, the primary purpose of which was to remove the common-law disabilities of marriage.

The judgment below was right and should be affirmed, with costs.

All concur, except GRAY, J., absent, and HAIGHT, J., dissenting.

Judgment affirmed.