Argued 6 November; decided 2 December, 1901.

## BOOTH'S WILL.

[61 Pac. 1135, 66 Pac. 710.]

RULES OF COURT—ADVANCING FOR ARGUMENT.

1. A case involving solely the construction of a will wherein only private persons are interested does not involve any question of "public importance" as that expression is used in Rule 16 of the supreme court, justifying a hearing out of its regular order.

STATUTES—REPEAL BY IMPLICATION.

2. A subsequent act, not covering the entire ground of an earlier act, and not clearly intended as a substitute for it, does not repeal such earlier act, unless its provisions are so repugnant to it that both cannot stand.

REVOCATION OF WILL BY MARRIED WOMAN—STATUTES.

3. Section 3072, Hill's Ann. Laws, providing that the will of an unmarried woman shall be deemed revoked by her subsequent marriage, has not been impliedly repealed by Section 780, Hill's Ann. Laws, declaring that a written will cannot be revoked otherwise than by another written will, or canceled or destroyed by the testator himself or by another person in his presence, the latter section having reference only to revocation by some direct act of the testator; nor by section 2992, removing the common-law disabilities of married women, and vesting them with complete control of their property as though unmarried; nor by section 2998, declaring that all laws which impose or recognize civil disabilities in a wife not imposed or recognized as existing as to the husband are thereby repealed; and section 3072 is still in force.

From Marion: REUBEN P. BOISE, Judge.

In September, 1888, Verena Wischer, an unmarried woman, over eighteen years of age, and of sound mind, executed her will in due form. Thereafter she married John C. Booth. No children were born of this marriage. Mrs. Booth died in January, 1899, and Mr. Booth in December of the same year. The question now is whether Mrs. Booth's property shall be disposed of under her will or under the statute—in other words, was the will revoked by the subsequent marriage of its maker. The county court admitted the will to probate, but that order was reversed by the circuit court, from which decree the proponents appeal.                                    AFFIRMED.

Decided 23 July, 1900.

ON MOTION TO ADVANCE FOR HEARING.

Submitted without oral argument.

PER CURIAM. 1. The motion to advance in this case must be denied. It is a civil action, involving no question of public importance, and, under Rule 16 of the Supreme Court of Oregon (35 Or. 587, 600) must come up for argument in the order of its entry on the trial docket. An early hearing is no doubt important to the immediate parties litigant; but the same is probably true of the other cases entitled to precedence over it, and it would be unjust to them to advance it out of its order.

MOTION OVERRULED.

Decided 2 December, 1901.

ON THE MERITS.

For appellant there was a brief over the names of *Wm. M. Kaiser, Woodson T. Slater, Tilmon Ford,* and *F. A. Turner,* with an oral argument by *Messrs. Slater* and *Ford.*

For respondent there was a brief over the names of *D. R. N. Blackburn* and *Brown, Wrightman & Myers,* with an oral argument by *Mr. Blackburn* and *Mr. J. N. Brown.*

MR. CHIEF JUSTICE BEAN delivered the opinion of the court.

The single question presented on this appeal is whether the will of an unmarried woman is revoked by her subsequent marriage. The statute (Hill's Ann. Laws, § 3072) passed in 1853, and continued in force by the constitution, Art. XVIII, § 7, expressly so declares. But it is contended that it has been repealed by sections 780, 2992, and 2998, which read as follows:

"A written will cannot be revoked or altered otherwise than by another written will, or another writing of the testator, declaring such revocation or alteration, and executed with the same formalities required by law for the will itself; or unless the will be burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person, in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction, shall be proved by at least two witnesses." Section 780.

"The property and pecuniary rights of every married woman at the time of her marriage, or afterwards acquired by gift, devise, or inheritance, shall not be subject to the debts or contracts of her husband, and she may manage, sell, convey, or devise the same by will to the same extent and in the same manner that her husband can property belonging to him." Section 2992.

"All laws which impose or recognize civil disabilities upon a wife which are not imposed or recognized as existing as to the husband are hereby repealed; *provided,* that this act shall not confer the right to vote or hold office upon the wife, except as is otherwise provided by law," etc. Section 2998.

2. It will be observed that there is no express repeal by the sections quoted of section 3072, and therefore, if repealed at all, it is by implication. But before an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it, can have the effect of repealing a former statute, it must appear that its provisions are so repugnant to the other that both cannot stand. It is a reasonable presumption that

all laws are passed with knowledge of those already existing, and that the legislature does not intend to repeal a statute without so declaring. It is therefore the duty of the court to adopt any reasonable construction that will give effect to both acts, and, in order that one may have the effect of repealing another by implication, its conflict with the former act must be "so positive as to be irreconcilable by any fair, strict, or liberal construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving, at the same time, the force of the earlier law, and construing both together in harmony with the whole course of legislation upon the subject": Endlich, Interp. Stat. § 210; *Bower* v. *Holladay,* 18 Or. 491, 496 (22 Pac. 553); *Winters* v. *George,* 21 Or. 251 (27 Pac. 1041). Unless, therefore, the provision that a will made by an unmarried woman shall be deemed revoked by her subsequent marriage is so repugnant to sections 780, 2992, and 2998 that it cannot stand without destroying their intent and purpose, it must be regarded as valid, however inconsistent in principle it may appear.

3. Now, section 780 is a part of the chapter on evidence, and has reference alone to the revocation of a will by some direct act of the testator, and not by inference of law from his acts or conduct: Schouler, Wills (2 ed.), § 380. It is substantially the same as the English statute of frauds (29 Car. II. c. 3, § 6), notwithstanding which the English courts have uniformly held that the marriage of a woman absolutely revoked her will, and the marriage of a man and birth of a child had the same effect: 1 Jarman, Wills (6 ed.), *110; 1 Redfield, Wills, *294. So there is no room for the contention that section 3072 was repealed by section 780.

This brings us to a consideration of the effect of sections 2992 and 2998. At common law a woman lost the control and disposition of her property and her testamentary capacity by her marriage, and therefore a will previously made by her was revoked: Schouler, Wills (2 ed.), § 424. Recent legislation in many of the states in this country, however, has removed the common-law disabilities of married women, and vested them

with the complete control and disposing power over their property, the same as if unmarried; and it is generally held that the effect of such legislation is to abrogate and annul the common-law rule, because it removes the reason upon which it was founded, and substitutes an entirely new principle and policy: *Chapman* v. *Dismer,* 14 App. D. C. 446; *Appeal of Emery,* 81 Me. 275 (17 Atl. 68); *Noyes* v. *Southworth,* 55 Mich. 173 (20 N. W. 891, 54 Am. Rep. 359); *Fellows v. Allen,* 60 N. H. 439 (49 Am. Rep. 328); *In re Ward's Will,* 70 Wis. 251 (35 N. W. 731, 5 Am. St. Rep. 174.); *Roane* v. *Hollingshead,* 76 Md. 369 (25 Atl. 307, 17 L. R. A. 592, 35 Am. St. Rep. 438*); *Webb* v. *Jones,* 36 N. J. Eq. 163; *In re Tuller's Will,* 79 Ill. 99 (22 Am. Rep.164). But not a single case has been brought to our attention holding that such legislation repeals a positive statute declaring that a will made by an unmarried woman shall be deemed revoked by her subsequent marriage, nor do we think one can be found, because there is no inconsistency in fact between the two laws. As said in *Loomis* v. *Loomis,* 51 Barb. 257: "A case cannot be imagined where they can ever come in conflict. The first act, on the marriage of a woman, revokes a will made by her before marriage. The last  *  *  *  gives a married woman a right to receive and hold separate property, and carry on separate business, and have her earnings, and to sell, convey, devise, and will her separate property,— entirely separate and distinct things, having no connection with or relation to each other." Both New York and Pennsylvania have statutes providing that the will of an unmarried woman shall be revoked by her subsequent marriage, and Massachusetts has one, which, as construed by its courts, has the same effect. In each of these states it has been expressly held that subsequent legislation conferring upon a married woman the right to sell, convey, and devise her property as if unmarried did not repeal the previous statute: *Loomis* v. *Loomis,* 51 Barb. 257; *Lathrop* v. *Dunlop,* 4 Hun, 213; *Brown* v. *Clark,* 77 N. Y. 369; *In re Kaufman,* 131 N. Y. 620 (30 N. E. 242, 15

---

*NOTE.—Revocation of a Woman's Will by her Subsequent Marriage.

L. R. A. 292*) ; *In re McLarney's Will,* 153 N. Y. 416 (47
N. E. 817, 60 Am. St. Rep. 664; *Swan* v. *Hammond,* 138 Mass.
45 (52 Am. Rep. 255) ; *In re Fransen's Will,* 26 Pa. 202; *In
re Craft's Estate,* 164 Pa. 520 (30 Atl. 493) ; *Appeal of Martin,* 164 Pa. St. 520.

In *Brown* v. *Clark,* 77 N. Y. 369, Mr. Justice ANDREWS, in
discussing the question says: "The language of the statute
that the will of an unmarried woman shall be deemed revoked
by her subsequent marriage is the declaration of an absolute
rule. The statute does not make the marriage a presumptive
revocation, which may be rebutted by proof of a contrary
intention, but makes it operate *eo instanti* as a revocation.
*  *  * It is claimed by the contestants that the testamentary
capacity conferred upon married women by the recent statutes
in this state takes away the reason of the rule of the common
law, and that upon the maxim, '*Cessante ratione legis, cessat lex
ipse,*' the rule should be deemed to be abrogated. Upon the
same ground it might have been urged at common law that the
marriage of a *feme sole* should only be deemed a revocation or
suspension of her prior will during the marriage, and that
when the woman's testamentary capacity was restored by the
death of her husband leaving her surviving the will should be
revived; but the contrary was well settled. *  *  * But the
courts cannot dispense with a statutory rule because it may appear that the policy upon which it was established has ceased.
The married women acts confer testamentary capacity upon
married women, but they do not undertake to interfere with or
abrogate the statute prescribing the effect of marriage as a revocation. It was quite consistent that the legislature should
have intended to leave the statute of 1830 in force, although
the new statutes took away the reason upon which it was based.
The legislature may have deemed it proper to continue it for
the reason that the new relation created by the marriage would
be likely to induce a change of testamentary intention, and that
a disposition by a married woman of her property by will

---

*NOTE.—Meaning of word "unmarried."

should depend upon a new testamentary act after the marriage.'' And in *Re McLarney,* 153 N. Y. 416 (60 Am. St. Rep. 664, 47 N. E. 817), in referring to the same matter, Mr. Justice O'BRIEN remarks: ''This rule was incorporated in our statute law * * * at a time when a married woman was incapable of making a will, and, of course, it was not intended to have any application whatever to testamentary instruments made during coverture. · Since the disabilities of married women to dispose of property by will have been removed in this state by legislation, the reason of the rule no longer exists, though it remains a part of the statute law. It has been held by this court that it was not abrogated by the subsequent legislation conferring testamentary capacity upon married women and removing the reason of the rule at common law. The courts cannot dispense with a statutory rule merely because it appears that the policy upon which it was established has ceased. The legislature might very properly remove it from the statute book by repeal, but in the meantime it cannot be disregarded by the courts.'' It is clear, therefore, that section 3072 is not repugnant in fact to subsequent legislation removing the disabilities of married women, and that it cannot be disregarded by the court so long as it remains unrepealed. It may seem unnecessary and inexpedient that a woman's will should be revoked by her marriage, when she still retains the full control and disposition of her property, and may thereafter make and revoke wills at her pleasure. But we are not the judges of the wisdom or expediency of legislation, nor have we authority to declare a statute repealed on such grounds.

Especial stress is laid on section 2998. That section, however, is applicable alone to married women. It was intended to repeal all laws which impose or recognize civil disabilities upon a wife which are not imposed or recognized as existing as to the husband, except the right to vote or hold office; and so it has been construed in *King* v. *Voos,* 14 Or. 91 (12 Pac. 281); *Ingalls* v. *Campbell,* 18 Or. 461 (24 Pac. 904); *First Nat. Bank* v. *Leonard,* 36 Or. 390 (59 Pac. 873). But, before a woman can be brought within the operation of this statute,

she must assume the status of a wife. The rights or powers of a single woman are not affected by it, and we are aware of no rule of construction under which it can be held to have interfered with or abrogated the statute declaring the effect of her marriage upon a previous will. We have no alternative but to enforce the law as we find it upon the statute books, and to hold that the will of an unmarried woman is revoked by her subsequent marriage.

These views lead to the affirmance of the decree of the court below, and it is so ordered.                                    AFFIRMED.

WOLVERTON, J., being related to one of the parties, took no part in the decision.

Decided 25 November, 1901.