Argued October 13, remanded with instructions November 9, 1960

YETTICK ᴇᴛ ᴜx *v.* CITY OF ST. HELENS

356 P. 2d 553

*Marshall C. Hjelte,* St. Helens, argued the cause and filed a brief for the appellant.

*George G. Van Natta,* St. Helens, argued the cause and filed a brief for the respondents.

Before McAllister, Chief Justice, and Warner, Sloan, O'Connell and Howell, Justices.

## SLOAN, J.

Plaintiffs filed this suit to set aside a special assessment levied against their property by defendant city. The assessment was for a street improvement. Defendant's answer alleged the procedural action taken by the city to cause the improvement and the assessment to be made. The plaintiffs demurred to the answer on the ground that the allegations of the answer established that the city had violated the city charter in making the improvement. The trial court sustained the demurrer. Defendant appeals from the order sustaining the demurrer and the subsequent decree which invalidated the assessment.

The basis of the trial court's decision is found in an amendment to the section of the city charter that specifies the costs of an improvement that are to be included in an assessment. The trial court held that the particular language of the amended section required the city to construct special improvements only on a contract basis. That is: By advertising for bids and other procedure usually prescribed for a governmental unit to enter into a construction contract. In this instance the work was done by use of city employees and equipment.

It is necessary to copy the questioned section of the charter. We should preface that, however, by saying that another section of the charter specifically authorized the city to construct an improvement by use of its own facilities or to do some part or all of the improvement by contract. Other sections of the charter imply to the city council the power to construct improvements without limitation as to method. With that in mind we now quote the amended section. The amendment we are concerned with is in brackets. Other minor amendments to this section, adopted by the people at the same time, are not relevant. This is the section that caused the trial court to hold the city could only construct by contract:

"SECTION 110. Whenever any street improvement, or the construction, reconstruction, or repair of any sewer, any portion of the cost of which is to be assessed upon the property benefited thereby, is completed in whole or in such part that the cost of the whole can be determined, the engineer shall certify to the recorder the accuracy of the original estimate of the work to be done, or if, in the progress of the work it has been found necessary to make any alteration in said estimated work, for any cause whatsoever, said engineer shall file a corrected

estimate in detail of such work, and the council shall thereupon apportion the cost thereof (except the share to be paid in case of street improvement by railroad or street railway companies, by reason of their use of the streets) upon the lots, parts of lots, and parcels of land adjudged by the council to be directly or indirectly benefited thereby. [The contract price based upon the final certificate of the city engineer, the costs of rights of way and expense of condemning land, 5 per cent of the contract price as the cost of engineering and superintendence, and the interest accrued and accruing on progress payment warrants from the date of issuance to a date not exceeding ninety days after the filing of the certificate of corrected estimate above described (such interest not to exceed 5 per cent per annum and not to be computed upon extension of time allowed in the contract), shall be deemed to be the cost of every sewer, and/or drain, or street improvement.] When the council has ascertained what it may deem a just apportionment of said costs in accordance with the benefit, directly or indirectly, derived by each lot and part of lot, or parcel of land within the improvement district adjudged to be so benefited, the same shall be a proposed assessment * * *."

The sections of the charter that expressly or impliedly authorized the city to utilize its own facilities for the purpose of constructing improvements were not amended in any respect when the above amendment was adopted in 1930. Plaintiff argues, and the trial court apparently held, that the specific reference to the "contract price" within the above amendment operates to repeal the other sections of the charter just referred to. Other arguments are advanced by plaintiffs but the ultimate effect of their argument would require the implied repeal of the other specific language in the charter. We must decide if that be correct. There is no doubt as to the law to be applied.

■ Implied repeal is not favored. *Webber v. Bailey,* 1935, 151 Or 488, 51 P2d 832.

"It will be observed that there is no express repeal by the sections quoted of section 3072, and therefore, if repealed at all, it is by implication. But before an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it, can have the effect of repealing a former statute, it must appear that its provisions are so repugnant to the other that both cannot stand. * * * It is therefore the duty of the court to adopt any reasonable construction that will give effect to both acts * * *." Chief Justice ROBERT S. BEAN in *Booth's Will,* 1901, 40 Or 154, 156, 61 P 1135, 66 P 710.

In performing the duty described by Chief Justice BEAN we find little difficulty in reconciling the language of the amendment with the powers otherwise granted by the charter.

■ The section amended, and the amendment itself, was not intended as a limitation upon the method of construction of an improvement. The section relates to the costs that may be included in the assessment and only to costs. Notice that in addition to the reference to contract price the amendment also permits the addition of other important costs: the costs of rights of way and condemning land and the 5 per cent addition for engineering. None of these items were included within the original section. The intention expressed by the amendment was to expand the power of the city council to impose all improvement costs upon benefited property owners, not to limit the power. The people wanted the specific costs to be borne by the benefited owners and not by all the taxpayers.

■ The amendment was poorly worded. However, we must read this language together with other sections

of the charter that authorize defendant city to perform the work either in whole or in part by contract or by city employees. The term "contract price", therefore, refers to the cost incurred by either method of construction and was not limited to the price or cost set only by contract. The term was not a limitation upon the means of construction. It was intended to specify costs to be included and, in respect to that part of an improvement done by contract, the contract price was the amount to be assessed against the property owner, no more or no less. That price, together with the other costs, was to be determined by the city engineer and certified, by that official, to the council. Other language of this section makes it clear that the costs the city engineer shall include in his certificate are not limited to contract price. It is no more than one item of cost to be included in his certificate. It is the engineer's total certified cost that forms the basis of the assessment. To hold otherwise would produce an absurd, impracticable result.

"When, however, a literal application of the language produces an absurd or unreasonable result, it is the duty of the court to construe the act, if possible, so that it is a reasonable and workable law and not inconsistent with the general policy of the legislature: [citing cases]." *Fox v. Galloway*, 1944, 174 Or 339, 347, 148 P2d 992.

The decree is set aside and the case remanded with instructions to overrule the demurrer.