SAMUEL H. COHEN and MAURICE H. COHEN, Appellants, v. JULIA HERBERT et al.

### Division Two, July 1, 1907.

1. **WILL: Joint Tenancy: Tenancy in Common.** Under the statute and a will by which testator devised property in 1874 to his "said daughters Julia and Victoria jointly," they became tenants in common; and upon the death of Victoria without children and intestate her interest descended, not to Julia alone as the survivor, but to the brothers and sisters of Victoria in equal parts, her mother being dead.

2. ——: **Probated in Another State: Record Here.** Where a will executed in another State according to the laws of Mis-

souri was probated and recorded in that State and an authen-
ticated copy of such record was filed in this State in the
county where the land is situated, a copy of this last record
furnishes conclusive proof of the will.

3. ———: Probate: Judicial Act. The judgment of probate by a
court having probate jurisdiction is a judicial act, and is
binding upon all the world until set aside in the manner and
within the time prescribed by law, and cannot be attacked
collaterally.

4. ———: ———: ———: Single Woman: Subsequent Marriage.
The will of an unmarried woman, who subsequently marries,
admitted to probate in New York and thereafter recorded in
this State, cannot at any time be revoked by a suit in eject-
ment against the devisees, and can only be revoked by a direct
suit to set the will aside brought within five years after it
was filed for record in this State. Notwithstanding by the
statutes, both of this State and of New York at the time of
its execution, the will was revoked by her subsequent mar-
riage, its probate in New York was a judicial act and a judg-
ment of a court of competent jurisdiction, which could be set
aside only by a direct suit brought for that purpose within
the time prescribed by statute.

Appeal from St. Louis City Circuit Court.—*Hon. Jas.
R. Kinealy,* Judge.

·AFFIRMED.

*Herman A. Haeussler* and *Harry H. Haeussler* for
appellants.

(1) Appellants, at the death of their sister Vic-
toria, were each entitled to the one-eighth of the prop-
erty in question. The will of the father gave to re-
spondent Julia, and her sister Victoria, the property
in common, and not as joint tenants, and so the court
below held. Lemmons v. Reynolds, 170 Mo. 227; Rod-
ney v. Landau, 104 Mo. 251; Davis v. Smith, 4 Har.
(Del.) 68; sec. 4600, R. S. 1899, same as at date of
will; 2 Wagner's Stat., p. 1352, chap. 140, sec. 12. (2)
The will of Victoria made and executed whilst a *fem-
me sole* was revoked by her subsequent marriage to
respondent Herbert, both under the laws of New York

and Missouri. Sec. 4607, R. S. 1899, same as at date of will; 2 Wagner's Stat. p. 1365, chap. 145, sec. 6; 4 N. Y. Rev. Stat. 1901, p. 4889, sec. 44; Brown v. Clark, 77 N. Y. 369; Matter of Davis Est., 1 Tuck. (N. Y.) 107; Lathrop v. Dunlop, 14 Hun 213; Crum v. Sawyer, 132 Ill. 457; Duryea v. Duryea, 85 Ill. 41; Swan v. Hammond, 138 Mass. 45; Blodgett v. Moore, 141 Mass. 75. (3) The antenuptial marriage contract between Victoria and her husband, Richard Herbert, did not prevent the revocation of the will made by her prior to her marriage. Under the statutes a woman's subsequent marriage revokes her prior will without regard to her intention. Hence, the fact that the will was made in contemplation of the marriage, and left the property to the intended husband, does not prevent its being revoked. Fransem's Will, 26 Pa. St. 202; Walker v. Hall, 34 Pa. St. 488; Crum v. Sawyer, 132 Ill. 457; Duryea v. Duryea, 85 Ill. 41; Am. Bd. of For. Mis. v. Nelson, 72 Ill. 564. (4) A will to be of any validity as a transfer of title to land, must be a valid will under the laws of the State where the land is located, and must be executed, attested and probated in the manner prescribed by the law of the State where the land is located. Keith v. Keith, 97 Mo. 223; sec. 4634, R. S. 1899; Cabanne v. Skinker, 56 Mo. 357; Richardson v. De-Giverville, 107 Mo. 433; Graven v. Allen, 100 Mo. 293. (5) The taking by appellants of the deed of trust executed July 31, 1876, by respondent, Julia Herbert, did not estop appellants from claiming an interest in the property and disputing respondent's sole ownership, for the truth would appear from the reading of the entire deed, and Julia Herbert neither acted upon nor altered her situation because of same. Rosencranz v. Dry Goods Co., 175 Mo. 518; Harrison v. Reynolds, 183 Mo. 533; Perkinson v. Hoolan, 182 Mo. 189; Knox v. Railroad, 58 Hun 517; Nicoll v. Burke, 45 Super. Ct. 526; Bowers v. Smith, 8 N. Y. Supp. 226.

*Rowell & Zumbalen* for respondents.

(1)    (a)    The judgment of a court of competent jurisdiction, admitting to probate the will of a married woman made while she was single, is, until set aside and annulled in the manner provided by law, a conclusive adjudication that the instrument is the valid and unrevoked will of the testatrix, binding upon all the world. 1 Woerner, Am. Law of Administration (2 Ed.), sec. 277; In re Broderick's Will, 21 Wall. (U. S.) 503; Simmons v. Saul, 138 U. S. 439; Jourdan v. Meier, 31 Mo. 40; Dillworth v. Rice, 48 Mo. 124; Poplin v. Hawke, 8 N. H. 124; Parker v. Parker, 11 Cush. (Mass.) 519; Cochran v. Young, 104 Pa. St. 334; Wilson v. Donnelly, 119 Ind. 565; Bowman v. Allen, 113 Ill. 53; Chicago T. & T. Co. v. Brown, 183 Ill. 420. (b) Such a will, executed, attested and proved in another State, in accordance with the requirements of the statute of Missouri, concerning the execution, attestation and probate of wills, has, when an authenticated copy thereof, and of its probate have been filed in the recorder's office of the county in Missouri where the land lies, the force and effect of a proved domestic will, and will pass title to the land here, unless set aside in a direct proceeding. G. S. 1865, p. 528, sec. 3, p. 529, sec. 20, p. 530, secs. 33, 34, 29, 35; Applegate v. Smith, 31 Mo. 166; Keith v. Keith, 97 Mo. 223; Fenderson v. Missouri Tie & T. Co., 104 Mo. App. 290; Cold Storage Co. v. Winsor, 148 Ind. 682. (c) A will made by an unmarried woman in contemplation of marriage and in pursuance of a power to dispose of property reserved to her in an ante-nuptial contract, operates as the execution of a power of appointment, not as a testamentary disposition of an estate, and hence is not affected by her subsequent marriage. 2 Jarman on Wills, 129; Fellows v. Allen, 60 N. H. 439; Webb v. Jones, 36 N. J. Eq. 163; Noyes v. Southworth, 55 Mich. 359; Hunt's Will, 81 Me. 275; McMahon v. Allen, 4 E. D. Smith

(N. Y.) 552; Lant's Appeal, 95 Pa. St. 279; Osgood v. Bliss, 141 Mass. 474; Hudnall v. Ham, 183 Ill. 486; Stewart v. Mulholland, 88 Ky. 38. (2) Appellants are estopped to claim that the will of their sister was revoked by her subsequent marriage, by reason of the fact that they elected to claim under the will and have received the legacies therein given them. Stone v. Cook, 179 Mo. 534, 64 L. R. A. 287; 1 Woerner's Am. Law of Adm. (2 Ed.) marg. p. 500; Utermehle v. Norment, 197 U. S. 40; Branson v. Watkins, 96 Ga. 55; Fry v. Morrison, 159 Ill. 244; Madison v. Larmon, 170 Ill. 65; Drake v. Wild, 70 Vt. 52; Fisher v. Boyce, 81 Md. 46. (3) Appellants are estopped to assert any ownership to the property by their solemn recognition of Julia Herbert's ownership of the whole title contained in the deed of trust to which they are parties. Clamorgan v. Greene, 32 Mo. 285; Stevenson v. Saline County, 65 Mo. 425; Freeman v. Auld, 44 N. Y. 50; Rossell v. Wickham, 36 Barb. 386; Williams v. Swetland, 10 Iowa 51; Todd v. Eighmie, 38 N. Y. Supp. 304; Wilcoxen v. Osborne, 77 Mo. 621; Stimson v. Bank, 28 Mo. 259; Smith McCord D. G. Co. v. Farwell Co., 50 Pac. 149; Railroad v. Donovan, 104 Tenn. 465; Tack Co. v. Bank, 111 Ga. 703; Wedge v. Moore, 6 Cush. (Mass.) 8. (4) Defendant Julia Herbert has been in open, notorious, exclusive, continuous adverse possession of the property since 1876, claiming title to the whole, and appellants are therefore barred by the Statute of Limitations. Warfield v. Lindell, 30 Mo. 286, 38 Mo. 580; Dunlap v. Griffith, 146 Mo. 283; Hutson v. Hutson, 139 Mo. 229; Hendricks v. Musgrove, 183 Mo. 300; Clymers v. Dawkins, 3 How (U. S.) 690; Clark v. Courtney, 5 Peters (U. S.) 354; Brown v. Brown, 14 Lea (Tenn.) 253; Rogers v. Winton, 2 Humph. 122; Knowles v. Brown, 69 Iowa 11; Thornton v. Bank, 45 Me. 176; McCann v. Welch, 106 Wis. 142; Unger v. Mooney, 63 Cal. 586.

GANTT, J.—This is an action in ejectment to recover two-eighths of the premises known as number 305 North Broadway, in the city of St. Louis, Missouri, being a lot of twenty-nine feet on the west side of Broadway, by a depth of one hundred and two feet, the south line thereof being twenty-eight feet north of Olive street, and for partition thereof between the parties. The parties in interest are all the surviving children of Hyam H. Cohen, deceased, under whom they all claim.

The first count is in the ordinary form for ejectment.

The second count alleges that the plaintiffs and defendants Julia Herbert and Elizabeth Henriques are owners in common of said premises, the plaintiffs and Elizabeth Henriques each owning one-eighth thereof, and defendant Julia Herbert owning five-eighths thereof; that defendant Richard J. Herbert is the husband of Julia Herbert, and defendant Peter Oakes the tenant in possession under a lease from Julia Herbert; that Julia Herbert's interest is subject to a deed of trust securing two notes for nine thousand dollars each, one of them being payable to each of the plaintiffs; that Hyam H. Cohen, the father of plaintiffs and of defendants Julia Herbert and Elizabeth Henriques, died owning said premises on May 10, 1874, and by his will devised the same to defendant Julia Herbert, and her sister Victoria Cohen; that said Victoria died intestate on May 7, 1876, leaving, as her sole heirs at law, the plaintiffs and the defendants Julia and Elizabeth; that defendant Julia has, ever since her sister's death, collected the rents and income and has failed and refused to account to plaintiffs for their portions of the same; and prays for partition and an order of sale.

Defendant Elizabeth Henriques made default.

The answer of defendant Oakes admits his pos-

session of the premises as tenant of Julia Herbert, and denies all other allegations of the petition.

The answer of Julia and Richard J. Herbert admits that they are husband and wife, admits the tenancy of Oakes under said Julia, and denies all other allegations of the first count of the petition. It admits that Hyam H. Cohen, father of the parties, died seized of the premises on May 10, 1874; admits that said Julia has, since her sister Victoria's death, collected the rents, and denies all other allegations of the second count of the petition. Said answer then sets up the following defenses of new matter, viz.:

"1. That said Hyam H. Cohen by his will, duly admitted to probate, devised said premises to his daughters Julia and Victoria, as joint tenants, and that upon the death of the said Victoria, defendant Julia Herbert acquired the whole of said property by right of survivorship.

"2. That said Victoria Cohen by her will, duly admitted to probate in the State of New York, by a court having jurisdiction of the subject-matter and the parties, an authenticated copy of said will and the probate thereof having been duly filed in the recorder's office of St. Louis county, Missouri, devised whatever interest she had in said property to defendant Julia Herbert, and bequeathed to each of the plaintiffs, Samuel H. and Maurice H. Cohen, one-third of the proceeds of the sale of all her bonds, stocks and property, and that said Samuel H. Cohen and Maurice H. Cohen each received and took the interest given to them by said will.

"3. That, on February 19, 1875, Victoria Cohen entered into an ante-nuptial contract with Richard J. Herbert, whereby she conveyed her interest in said premises to Samuel Cohen in trust for her sole and separate use and benefit, free from all rights of her intended husband, and for such other uses as she might

from time to time appoint, with power to said Victoria to devise the same or any part thereof by her last will; that on February 23, 1875, said Victoria exercised said power of appointment so reserved, by appointing her interest in said premises to defendant, Julia Herbert, in and by her last will and testament.

"4.  That plaintiffs are estopped to claim any interest in said premises, other than as mortgagees in a certain deed of trust dated July 31, 1876, made by Julia Herbert to secure a loan from each of the plaintiffs; that by said deed of trust, which was signed by plaintiffs as *cestuis que trust,* they acknowledged Julia Herbert to be the sole owner of the said premises, and acknowledged that the same had been devised to said Julia and Victoria Cohen as joint tenants, and that defendant Julia Herbert, relying upon plaintiffs' acknowledgment of her sole ownership, afterwards spent large sums of money in improving said property.

"5.  That defendant Julia Herbert now is, and for more than twenty-five years past has been, in actual, open, notorious, exclusive and adverse possession of the said premises, claiming title to the whole thereof."

The reply denied all the new matter set up in the answer.

A jury was waived and trial had before the Hon. James R. Kinealy.  The plaintiffs offered in evidence the will of Hyam H. Cohen, which was duly admitted to probate in the city of New York July 27, 1874, and an authenticated copy thereof and of its probate filed in the office of the recorder of deeds of the city (then county) of St. Louis, Missouri, on September 1, 1874.

By said will, the testator devised the property in suit to his "said daughters Julia and Victoria jointly," and he also gave to said Julia and Victoria five twenty-second parts jointly, and his daughter Elizabeth, eight twenty-seconds, his son Samuel four twenty-seconds,

and Maurice five twenty-seconds of the proceeds of the sale of his other lands, houses, bonds and stocks.

It appears that Victoria Cohen married R. J. Herbert, February 24, 1875, and died on May 7, 1876, leaving neither children nor mother nor father surviving her. She was survived by her two brothers, the plaintiffs, and her two sisters, Julia and Elizabeth. On November 14, 1877, the defendant Julia married Richard J. Herbert. At the time of her death, Mrs. Victoria Herbert lived in New York, and left a last will and testament which she had executed on February 23, 1875, the day before her marriage to R. J. Herbert was solemnized. After her death, this will was duly probated in New York and in it the plaintiff Samuel H. Cohen was named as one of the executors and he qualified and acted as such, and the plaintiff Samuel H. and Maurice Cohen each took and received one-third of the said Victoria Herbert's residuary estate as legatees under her said will, besides specific legacies of plate and jewelry. By the said will Mrs. Victoria Herbert devised her interest in the property in question to her sister Julia, and gave one-third of the proceeds of the sale of all her bonds, stock, etc., to her brother Samuel H. Cohen, and one-third to her brother Maurice H. Cohen, and named her brother Samuel H. Cohen and Richard J. Herbert as her executors in New York. On July 31, 1876, the defendant Julia Cohen, now Herbert, borrowed from each of the plaintiffs the sum of nine thousand dollars and executed and delivered to them as security for the same a deed of trust covering the whole of the property in question; since that time she had regularly paid to the plaintiffs the interest on the loan secured by said deed of trust. The principal of said loan was used by Julia Cohen in the erection of a five-story building upon the lot in suit. The defendant Samuel H. Cohen attended

205 Sup—35

to the erection of this new building for her. It was finished in 1877, and sometime afterwards was destroyed by fire. The defendant R. J. Herbert collected the insurance upon this property for his wife Julia, and she used the insurance money in rebuilding the premises. It also appears that Victoria Cohen and her intended husband R. J. Herbert, on February 19, 1875, entered into a marriage contract properly signed and acknowledged by them and recorded in the recorder's office in the then county of St. Louis on March 3, 1875. By this contract, Victoria Cohen conveyed to Samuel H. Cohen, as trustee, her undivided one-half interest in the property in suit for the sole and separate use and benefit of the said Victoria free from all rights of her intended husband and for such other use as she might thereafter appoint by last will or otherwise.

The decree of the surrogate's court of New York shows that said will was offered for probate by Samuel H. Cohen, one of the executors named therein; that on said application the surrogate court did ascertain by satisfactory evidence who were the husband and only heirs and next of kin of the deceased and their respective residences and did thereupon issue a citation to said husband, heirs and next of kin requiring them to appear and attend the probate of said will on May 25, 1876; that satisfactory proof was made of the service of said citation in the mode prescribed by law; that no one appeared to oppose the probate of the will, whereupon the surrogate took the proof of said will, and, on May 26, 1876, adjudged and decreed "that the instrument offered for probate in this matter is the last will and testament of the said testatrix, and as such is valid as a will of real and personal estate, and the same is hereby admitted to probate as a will of real and personal estate." This will was executed in accordance with the requirements of the laws of Missouri, and probated in conformity to the requirements of

statutes of this State. It further appeared that R. J. Herbert and Samuel H. Cohen administered the personal estate, and paid the legacies given by her said will to the legatees named therein, and made their report and settlements to the surrogate's court of New York, October 24, 1878. The deed of trust of July 31, 1876, given by Julia Cohen to secure the plaintiffs the repayment of the eighteen thousand dollars she borrowed from them, covered the whole property in question and contained the following recital: "Being the same property acquired by Hyam H. Cohen, father of the first party, by deed recorded in the recorder's office of the county of St. Louis in book number 182, page 140, and by him devised to the first party and her sister Victoria, now deceased, and the survivors of them, as may be seen by the will of the said Hyam H. Cohen and Victoria Herbert, duly filed and recorded in the probate court of the said St. Louis county." This deed of trust contained the statutory covenants of warranty and seizin, and was signed, sealed and acknowledged by both Samuel H. Cohen and Maurice H. Cohen, and recorded in St. Louis county on August 31, 1876.

Julia Herbert testified that she had been in the sole possession of this property from the death of her sister down to the present time, receiving all the rents and income therefrom and paying all the taxes and repairs; that she and her sister Victoria came into the possession of the property in July, 1874; that at the time of Victoria's death they were intending to tear down the old building and erect upon the property a five-story, iron and stone business building; that immediately after Victoria's death, she (Julia) proceeded to carry out this plan and sent her brother Samuel out here from New York to make arrangements for the building; that she borrowed the eighteen thousand dollars secured by deed of trust, from her brothers, for

the purpose of putting up a new building, and that it was used by her for that purpose; that the new building was completed in the spring of 1877, and she placed it in the hands of J. E. Kaime & Brother, to rent for her; that said building was destroyed by fire on December 17, 1878, whereupon she sent her husband, R. J. Herbert, to collect the insurance money and make arrangements for rebuilding it; that she collected fifteen thousand dollars insurance, which was all put into the new building, together with five or six thousand dollars additional money advanced by her; that her brothers Samuel and Maurice never made any claim to any ownership in this property until shortly before the institution of this suit, in the fall of 1902; that in 1902, she was making arrangements to pay off the deed of trust held by her brothers, by borrowing the money from another source; that, to make this new loan, it became necessary to have the title examined; that the title examiner reported certain objections to her title, based upon the wills of Hyam H. Cohen and Victoria Cohen, and that for the purpose of removing such objection she requested her brothers and sister Elizabeth to execute to her a quitclaim deed and they then, for the first time, claimed an interest in said property.

David F. Kaime testified that Mrs. Julia Herbert placed the property in his hands in the spring of 1877, and he has had charge of it ever since for her; that he collected the rents, paid the taxes and made repairs, and has remitted the balance to Mrs. Herbert; that during the whole of that time, the property has been assessed in the name of Mrs. Julia Herbert; that he occasionally met Samuel and Maurice Cohen during the years he has had charge of the property, and on such occasions they would speak to him about the property, referring to it as "our sister Julia's property on Broadway." That neither of them claimed to him to own an interest therein until shortly before the

bringing of this suit; that in the summer of 1902, he had the title investigated for the purpose of making a new loan on the property for Mrs. Herbert and the investigator reported the title defective and in consequence of such report, witness advised Mrs. Herbert to get her brothers and her sister to make her a quit-claim deed.

The defendants offered in evidence certain sections of the statutes of New York, the first of which defines the surrogate court to be a court of record, the second defines the jurisdiction of a surrogate as follows: "First, to take the proof of wills; to admit wills to probate. Second, to grant and revoke letters testamentary. Third, to direct and control the conduct and settle the accounts of executors. Fourth, to enforce the payment of debts and legacies and to distribute the estate of the deceased." The third section provides that a will executed by an unmarried woman should be deemed revoked by her subsequent marriage.

The court gave and refused certain declarations of law, which will be noticed in the course of the opinion. The court found the issues in favor of the defendants and rendered judgment for the defendants on both counts of the petition. From this judgment, the plaintiffs have prosecuted this appeal.

I. As to the first proposition advanced by the plaintiffs, to-wit, that by the will of Hyam H. Cohen, his daughters Julia and Victoria became tenants in common of the property in controversy, and that upon the death of Victoria without children and intestate, if the court should find from the evidence that she did die intestate as to said property, then one-half of said premises descended to the brothers and sisters of Victoria in equal parts, there is no controversy, as our statute, section 4600, Revised Statutes 1899, which was the same at the time of the execution of the will of

Hyam H. Cohen, provides: "Every interest in real
estate granted or devised to two or more persons, other
than executors and trustees and husband and wife,
shall be a tenancy in common, unless expressly de-
clared, in such grant or devise, to be in joint tenancy."
[Rodney v. Landau, 104 Mo. 251; Lemmons v. Rey-
nolds, 170 Mo. 227.]

II. The decisive question in this cause is, did
Victoria Cohen Herbert die intestate as to the real
estate in controversy herein? That she made
a will which was executed, attested and pro-
bated in the surrogate's court of New York county
in the State of New York, in the manner prescribed by
the laws of Missouri, at that time, General Statutes of
Missouri, 1865, page 528, section 3, and page 529, sec-
tion 20, is conceded, or at least fully appears by the
evidence in the cause. And that a copy of said will
and of the judgment admitting it to probate properly
authenticated according to the Act of Congress, was
recorded in the recorder's office of the then county of
St. Louis, on June 6, 1876, as required by section 34,
General Statutes 1865, page 530, also appears. The
statute of this State in force at that time, sections
33 and 34, page 530, General Statutes 1865, as at pres-
ent, dispensed with the probate anew in this State of
wills admitted to probate in another State, provided
they were executed, attested and proved in the manner
required by our laws. And in lieu of probate anew in
this State provided the "authenticated copies of such
wills and the probate thereof, shall be recorded in the
same manner as wills executed and proved in this
State, and shall be admitted in evidence in the same
manner and with like effect." Accordingly, it has been
ruled that where a will executed in another State ac-
cording to the laws of Missouri had been probated and
recorded in the former State and an authenticated copy
of such record was filed in the county where the land

was situated in this State a copy of this last record furnished conclusive proof of the will. [Applegate v. Smith, 31 Mo. 166; Keith v. Keith, 97 Mo. 223; and Fenderson v. Missouri Tie & Timber Co., 104 Mo. App. 290.] And it is the uniform ruling of this court that when a will has been probated in the court having probate jurisdiction, the judgment of probate is a judicial act and like any other judgment of the court of competent jurisdiction, it stands as a judgment binding upon all the world until set aside in the mode and within the time allowed by our law, and its validity as a will cannot be attacked collaterally. [Jourden v. Meier, 31 Mo. 40; Dilworth v. Rice, 48 Mo. 124; 1 Woerner, Law of Administration (2 Ed.), sec. 145; In re Broderick's Will, 21 Wall. (U. S.) 503.]

But the plaintiffs contend that both by the laws of New York and of this State at the time of the execution of her will by Victoria Cohen said will was revoked by her subsequent marriage to the defendant Richard J. Herbert. [G. S. 1865, p. 528, sec. 6, now sec. 4607, R. S. 1899; 2 Wagner's Stat. 1872, p. 1365, sec. 6; R. S. New York, 1901, vol. 4, p. 4889, sec. 44; 2 R. S. N. Y. 64, sec. 44.] The learned counsel for the plaintiffs have cited us to various decisions of the New York courts, notably Brown v. Clark, 77 N. Y. 369; Matter of Davis's Estate, 1 Tucker's Surrogate Rep. (N. Y.) 107, and Lathrop v. Dunlop, 4 Hun 213, to establish the proposition that the subsequent marriage of Victoria Cohen revoked her will. Now as to these cases Brown v. Clark was an appeal from the order of the Supreme Court reversing a decree of the surrogate, which had denied probate to an instrument presented as the last will and testament of Mary J. Clark Proctor, deceased. Mary J. Clark executed said instrument as her last will on August 25, 1873; subsequently she married Mr. Proctor. After her marriage and on December 7, 1876, she executed a

codicil. She died October 1, 1877. The surrogate court held that the will was revoked by the subsequent marriage of the testatrix and in this opinion the Court of Appeals concurred, both on the ground that by the common law, the marriage of a woman operated as an absolute revocation of her prior will (Forse and Hembling's case, 4 Coke 61; Hodsden v. Lloyd, 2 Bro. Ch. 534, and 2 R. S. N. Y. 64, sec. 44), and that the testamentary capacity conferred upon married women by the statute of that State did not repeal either the common law or the statute providing that the marriage of a *femme sole* revoked her will. It will be observed that the question arose on a direct application to probate the will and not as to the effect of a probate. To the same effect is the case of Davis's Estate in First Tucker. In that case the will was adjudged revoked by the surrogate court pending the proceedings in that court and as soon as the fact of the subsequent marriage was made to appear. Lathrop v. Dunlop, 4 Hun 213, was an appeal from a decision of the surrogate court refusing to admit to probate the will of Mrs. Jessie Dunlop Empson. It appears that Miss Dunlop duly executed her will and afterwards married and about two months after her marriage died. Her will was presented for probate and refused on the ground of subsequent marriage, so that the case in principle is like unto Brown v. Clark, supra.

To the same effect is Swan v. Hammond, 138 Mass. 45, which was a direct appeal from the probate court admitting a will made by a single woman who had subsequently married, to probate. The court held that the subsequent marriage was a revocation. And so also was the case of Blodgett v. Moore, 141 Mass. 75. The case of Crum v. Sawyer, 132 Ill. 457, was a bill in equity brought by the surviving husband of Mrs. Crum to enforce a contract made between a husband and wife during coverture. It appears that the wife

prior to her marriage had executed a will and a codicil and it was held that the subsequent marriage revoked and annulled her will. But there was no probate of the said will and hence the question now before us was not involved in that case, so that, we recur to the original proposition, what was the effect of the judgment of the surrogate court of New York county admitting to probate the will of Mrs. Victoria Cohen Herbert, notwithstanding the law of Missouri at that time provided that the subsequent marriage of a single woman would revoke her will made prior to her marriage? We have already seen that by the laws of this State the judgment of a probate court admitting a will to probate has the full force and effect of a judgment of any other court of competent jurisdiction and the will of the testator or testatrix stands as his or her will until set aside in the mode and within the time allowed by law and its validity as a will cannot be attacked collaterally. That the will might have been successfully attacked when it was offered for probate in the surrogate court cannot avail the plaintiffs at this time, unless the rule forbidding a collateral attack upon a judgment of a court of competent jurisdiction is entirely disregarded.

The question is not a new one in other jurisdictions in this country. Thus in Poplin v. Hawke, 8 N. H. 124, the court said: "The first question is whether M. Thom took anything under the last wills of Abigail Graves and Betty Thom. These wills were made during the lives of their husbands; and it has been settled in this State . . . that a married woman has no power to devise lands by will. If, then, the question was on the allowance of the wills of Abigail Graves and Betty Thom, it must be held that they had not power to devise, and the instruments be rejected. But both these wills have been allowed and proved in the probate court. The decrees of allowance stand un-

reversed, and those interested in the estate have taken no appeal. . . . The statute of 1791 did not declare, in express terms, the effect of a decree of the probate court, allowing and approving of a will purporting to contain a devise of real estate. But, from the provisions of the act, it is not doubted that it was intended the decree, unless appealed from, should be conclusive in passing the title of the estate, according to the provisions of the will, and bind all persons interested. The construction of those provisions may come up incidentally in suits at law, but the power and capacity of devising by any person seized; the sanity of the testator; the due attestation, and all questions relating to the validity of the will itself, are proper subjects of adjudication, upon the hearing, when the will is presented for probate. This must necessarily be the case.''

In Parker v. Parker, 11 Cush. (Mass.) 519, it appeared that the will was made in New Hampshire by a married woman, admitted to probate there, and a copy of the will and such probate recorded in Massachusetts, as provided by statute of the latter State. Under the law of both said States, a married woman had no capacity to make a will. Held: That the New Hampshire probate, filed and recorded in Massachusetts where the land was, unappealed from and unreversed, was final and conclusive upon the heirs of the testatrix, and that they could not deny the legal capacity of the testatrix to make such a will.

In Cochran v. Young, 104 Pa. St. 334, it appeared that a will devising real estate was duly admitted to probate on September 5, 1862. On February 11, 1881, a codicil of a later date disposing of the same property in a different manner, was admitted to probate. An action of ejectment was brought by the devisee under the codicil against the grantee of the original devisee under the first probate. Held: the probate of the

original will, not having been contested within five years as allowed by statute, was conclusive upon all parties and was not revoked by the subsequent probate of the codicil. The court said: "We are bound to accept the will of October 22, 1861, as the testator's last will and testament; its validity cannot now be questioned as to the realty devised under it. We have no right to assume that the paper of June 18, 1862, was his last will, simply because it bears a later date than the former; the presumption is otherwise, and that presumption is now conclusive."

In Winslow v. Donnelly, 119 Ind. 565, the court said: "The appellants seek a decree quieting title, and allege in their complaint that their title is clouded by a devise to the appellee. They aver that the will containing the devise was procured by the fraud of the devisee. . . . The complaint also alleges that the will 'was duly admitted to probate in the district court of Cedar county, Iowa, and a duly authenticated copy of said will, and the probate thereof, had been filed and recorded, under the provisions of the statute of this State, in Parker county.' The trial court did not err in sustaining the demurrer to the complaint. The judgment of the district court of Cedar county, Iowa, precludes the appellant from attacking the will in an action to quiet title."

In Bowen v. Allen, 113 Ill. 53, the action was ejectment. The plaintiff offered in evidence the will of Ann Quinn, admitted to probate by the Marion County Probate Court, which judgment was affirmed on appeal to the circuit court. It was shown that the will was made while she was unmarried, and that she subsequently married. Under the Illinois law the subsequent marriage operated as a revocation of the will. The court said: "It is also urged that the marriage of testatrix after its execution revoked the will. This is concluded by the judgment of the circuit court,

establishing and admitting the will to probate. This was a question to be considered in that case, and no doubt was. The question tried there was, whether it was the will of testatrix, and after hearing the evidence, on the trial, it was found that it was, and that finding must stand until the judgment is reversed or otherwise annulled by some regular proceeding had for the purpose. As long as it stands unreversed and unimpeached, it imports verity in all collateral proceedings. We must, therefore, receive and act upon it as the last will of testatrix.''

In Cold Storage Co. v. Winsor, 148 Ind. 682, under a statute in terms very much like section 35, page 530, General Statutes of Missouri, 1865, it was held that where the will of a married woman had been admitted to probate in New York, and a copy thereof and of its probate filed in Indiana where the land was situated, such will could be contested in the latter State within three years of the filing thereof, on the ground that the will was, under the Indiana statute, revoked by the subsequent birth of issue to the testatrix.

Under the General Statutes of 1865, sections 29 to 35, page 530, the plaintiffs in this case might have contested the will of Victoria Cohen Herbert within five years after said will was filed for record in this State, upon the ground on which they now seek to avoid its force and effect. But having failed to avail themselves of the remedy in the mode and within the time provided by our laws, the will of Victoria Cohen by which her interest in the real estate in suit in this case was devised to the defendant Julia Herbert, must be given full force and effect and held to have passed her undivided interest therein to her sister Julia, as has been recently held by this court in Stevens v. Oliver, 200 Mo. 492; reaffirming Jourden v. Meier, 31 Mo. 40; Stowe v. Stowe, 140 Mo. 594; and Stevens v. Larwill, 110 Mo. App. 140, wherein it was said: ''The suit for

partition cannot be regarded as a contest of the will. The will was duly probated and can be contested only by a proceeding in the manner required by sections 4622 and 4636, Revised Statutes 1899.'' It goes without saying that the count in ejectment herein is also a collateral attack upon the judgment of the surrogate court which was duly filed and recorded in the office of the recorder of deeds of the city (then county) of St. Louis, on June 6, 1876. Accordingly it must be ruled that the circuit court committed no error in refusing the second instruction requested by the plaintiffs.

The learned counsel on both sides have discussed other interesting propositions in this case, to-wit: whether the plaintiffs are not estopped by reason of their having received and taken their share of their sister Victoria's estate under the laws of the State of New York, and by their conduct in having loaned their said sister Julia $18,000 on this property and taken her deed of trust conveying the whole of the same to secure the said loan. Counsel on both sides have also discussed whether the Statute of Limitations has or has not barred the right of the plaintiffs to recover in this case, and whether the possession of the said Julia Herbert has or has not been adverse to plaintiffs' rights. And on the part of the defendants there is an able and learned discussion as to whether or not the will of the said Victoria, although not good as a will, may not be held a valid execution of the power of appointment reserved to her in her ante-nuptial contract with R. J. Herbert. We have considered the briefs on these points, but inasmuch as we have reached the conclusion that the judgment of the surrogate court of the county of New York probating the will of Victoria Cohen and the subsequent filing of the same and the probate thereof in the office of the recorder of deeds of St. Louis county and the failure of the plaintiffs to

contest that will within five years after its recording in St. Louis .county, conclusively established the title of Julia Cohen Herbert to the undivided one-half of the property in question, we deem ·it entirely unnecessary to decide the propositions so ably discussed by· the respective counsel. The judgment of the circuit court must be and is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.