## BRODNAX v. ÆTNA INSURANCE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF GEORGIA.

No. 61. Argued November 1, 1888. — Decided November 19, 1888.

The provision in § 1783 of the Code of Georgia, (ed. 1882,) that "the wife is a *feme sole* as to her separate estate, unless controlled by the settlement," and that "while the wife may contract she cannot bind her separate estate by . . . any assumption of the debts of her husband, and any sale of her separate estate made to a creditor of her husband in extinguishment of his debt shall also be void," does not apply to a settlement made upon her by the husband, by deed of trust conveying the property to a trustee free from the debts and liabilities of the husband, and providing that whenever the husband and the wife shall by written request so direct, the trustee shall execute mortgages of the property; and does not invalidate an otherwise valid mortgage, executed by the trustee, on such written request, in order to secure a debt due from the husband.

This was an appeal from a decree for the foreclosure of two mortgages.

The facts were briefly these: June 11th, 1866, Benjamin H. Brodnax, being the owner of certain real estate situated in Richmond County, Georgia, executed and delivered to his father, William E. Brodnax, a deed thereof in due form, in consideration of his affection for his wife, Martha Brodnax, and his duty to suitably provide "further sustenance and support," in trust to hold the same for the use and benefit of said Martha during her life, "free from the debts, contracts and liabilities of her present or any future husband (except such incumbrances or liens as by the written directions of myself [himself] and the said Martha may be made thereon);" upon her death to be reconveyed to said Benjamin if he survived her, but if not, then to such person as she might appoint, and, in case of her failure to appoint, to his heirs. Upon the written request of said Martha and Benjamin the trustee might sell and convey, the proceeds to be reinvested in property to

be held upon the same trusts, the purchaser not to be held responsible for the application of the purchase money.

The trustee was also authorized, whenever Brodnax and his wife should by written request so direct, to execute mortgages, liens, or other incumbrances upon the property for such sum or sums as they should in writing express, the mortgagees not to be responsible for the proper application of the mortgage money, or "hindered in any manner from enforcing the lien or liens of said mortgages."

In case of the death of William E. Brodnax, the trustee, or of his disability or unwillingness to execute the powers and duties of the trust, the grantor and his wife were given power to appoint a successor.

On June 14th, 1866, three days after the date of the deed, the trustee, in pursuance of the written request of the grantor and wife, executed a mortgage of the premises to the treasurer of the Soldiers' Loan and Building Association, to secure a loan of $2000. This mortgage was accompanied by a release signed by Mrs. Brodnax, acknowledging the receipt of five dollars and the advance of two thousand dollars to her husband and herself, and in consideration thereof releasing all right "to dower and twelve months' support in, to, and from the above mortgaged premises, the above deed of mortgage having first been read over and explained to me."

May 11th, 1867, the trustee in pursuance of the written direction of Mr. and Mrs. Brodnax, provided for in the deed, executed another mortgage to the Ætna Insurance Company for $3193.20, evidenced by a note for that sum to said company, signed by the trustee.

W. A. Brodnax, the trustee, resigned the trust, January 2d, 1868, and said Benjamin H. and his wife appointed, in writing, Ephraim Tweedy as successor in trust, who accepted the appointment and trust January 3d.

The first mortgage to the Soldiers' Loan Association was assigned to the Ætna Insurance Company, December 4th, 1868.

February 14th, 1869, Mrs. Brodnax obtained a decree of divorce a vinculo from said Benjamin H., and as alimony all his right, title and interest in said mortgaged property.

The Ætna Insurance Company filed its bill to foreclose, November 18th, 1878, against Martha Brodnax, to which Tweedy, the trustee, was subsequently made a party, and which alleged that Brodnax left the jurisdiction in 1869 and complainant did not know where he was. In her answer, Mrs. Brodnax denied that she received any of the money the mortgages were given to secure; denied that Brodnax received the $3193.20, and said that was a sum alleged to be due the. company for money collected by Brodnax, as its .agent, and converted to his own use; and averred that when she gave the written direction to the trustee to execute the second mortgage, it was under the pressure of threats by the company to prosecute her then husband criminally, and that the consideration of said mortgage was forbearance to prosecute, and that on those grounds the instrument was void. And she further insisted that both of said mortgages were attempts to bind her separate estate for her husband's debts, and therefore illegal.

The evidence tended to show that Mrs. Brodnax did not receive the money secured by either of the mortgages; that the note held by the Ætna was given for a balance due from Brodnax for premiums collected by him as agent and not paid over; that Mrs. Brodnax's brother, and perhaps her mother, told her that threats of criminal prosecution had been made, but that the Ætna not only did not know of such statements, but had never made threats of the kind to Brodnax or any one else, nor meditated, so far as appears, such prosecution; that Mrs. Brodnax was advised, as to the mortgage to the Ætna, that her direction to the trustee to execute it must be voluntary; that she took time to consider, and was then perfectly willing to sign such direction; that she made no complaint of this character until by her answer filed in May, 1879.; and that she paid several hundred dollars to the Ætna on account from 1874 to 1877 inclusive. It also appeared that the Ætna purchased and paid for the first mortgage, to protect its own, in December, 1868.

A decree of foreclosure was entered, from which the defendants appealed.

*Mr. W. W. Montgomery* for appellants.

Supposing the power to exist, and to have been properly exercised so far as the instrument is concerned, I submit that such a power contained in any instrument settling property upon a married woman is, by the laws of Georgia, void. She must leave her husband, whom she would most desire to help, to struggle with his creditors as best he can; the law, dreading his influence over her, puts her under disability for her own protection. The language of § 1783 of the code is as follows; " The wife is a *feme sole* as to her separate estate, unless controlled by the settlement. Every restriction upon her power in it must be complied with; but while the wife may contract, she cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband; and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void." *Sutton* v. *Aik n, Trustee*, 62 Georgia, 733, 740; *Klink* v. *Boland*, 72 Georgia, 485; *Capital Bank of Macon* v. *Rutherford*, 70 Georgia, 57; *Campbell and Jones* v. *Murray*, 62 Georgia, 86.

Money of the wife used by the husband to pay his debt to a creditor knowing it was the wife's money, can be recovered by the wife. *Chappell* v. *Boyd*, 61 Georgia, 662; *Maddox* v. *Oxford*, 70 Georgia, 179.

If property of the wife be sold partly to pay her debt, and partly to pay a debt of her husband, the sale is void if the property sold is not severable. *Campbell* v. *Trunnell*, 67 Georgia, 518.

If the instrument contains the power contended for by the appellee, the power so attempted to be conferred is void. Code, § 2661, reads: " Impossible, illegal or immoral conditions are void, and do not invalidate a perfect gift." *Ib.* § 2296, reads: " A condition repugnant to the estate granted is void; so are conditions to do impossible or illegal acts, or which in themselves are contrary to the policy of the law." Code, § 2723, reads: " Impossible, immoral and illegal conditions are void, and are binding upon no one." A wife cannot ratify the act of her husband in using her money to pay his debt. *Chappell* v. *Boyd*, 61 Georgia, 662.

*Mr. Joseph Ganahl* for appellee.

MR. CHIEF JUSTICE FULLER, after stating the case as above reported, delivered the opinion of the court.

If Mrs. Brodnax had the power under the deed of June 11, 1866, to direct the execution of the mortgages to secure her husband's debts, then the decree must be affirmed.

The objections of counsel to the maintenance of the decree, other than upon the question of power, do not appear to us to require serious-consideration.

As the evidence stands, no case of duress which could be availed of was made out in respect to the mortgage to the insurance company, nor is there any ground for the contention that the company took the note in compounding a felony.

There was no issue in the case as to whether Brodnax was living or not, and questions as to dower and the statutory support for a decedent's widow did not arise. No evidence was adduced to establish the death of Brodnax, and the averment of the bill in reference to his absence was made *diverso intuitu*, and not with the view of setting up his death by way of presumption, and seeking relief predicated thereon. Nor could the decree awarding alimony in 1869 operate to defeat a decree of foreclosure upon valid mortgages competently executed, or directed to be executed, by her in 1866 and 1867.

The real inquiry is, whether, under the laws of Georgia, Mrs. Brodnax could pledge the estate granted for her husband's debts.

The rule in Georgia prior to the adoption of the code, as to the power of a married woman to dispose of her separate estate, is thus stated in *Dallas* v. *Heard*, 32 Georgia, 604, 606: "Whenever property is secured to a *feme covert* to her sole and separate use, without qualification, limitations, or restrictions as to its use and enjoyment, she is to be regarded in respect to such estate, in all respects, as a *feme sole*, and it is chargeable and bound for the payment of all debts contracted by her that may be secured by promissory note, or other

undertaking in writing, to pay the same, whether said note is given by her alone, or jointly with others; she being the sole and exclusive owner of the property, she holds it with all the incidents of property — the right of selling, giving, or charging it with the payment of debts."

In *Clark* v. *Valentino*, 41 Georgia, 143, 147, the court approving of the language just quoted, says by Brown C. J.: "But it is insisted that this court has laid down a different rule as to the ability of the wife to bind her separate estate for the payment of the debts of her husband, in *Kempton* v. *Hallowell and Company*, 24 Georgia, 52; *Hicks, Trustee* v. *Johnson*, 24 Georgia, 194; and in *Keaton* v. *Scott*, 25 Georgia, 652. I think not. In all these cases the property was given and secured to the wife by deed or will, and it was expressly provided in the instrument, that it should in no case be subject to the debts of the husband; and the court held that her power of alienation was restricted by the donor in the instrument by which she acquired it; and that she could not on that account bind it for the payment of her husband's debt, that being the very thing to which the restricte p related. This amounts, however, only to an exception to the general rule, and is not the rule itself. The rule is, that the *feme covert* is a *feme sole* as to her separate estate, with full power of alienation or disposition at her pleasure. The exception is that if the donor has restricted the power of alienation or disposition, she is bound by such restriction, and cannot, directly or indirectly, alienate or bind it, in violation of the restriction placed upon it by the donor."

The designation of a particular mode in the gift or settlement might preclude the adoption of any other. *Wylly* v. *Collins*, 9 Georgia, 223; *Weeks* v. *Sego*, 9 Georgia, 199; but unless restrained or fettered by the instrument in which her estate originated, she had the absolute power of disposition. *Fears* v. *Brooks*, 12 Georgia, 195. Of course she could make such disposition for such object and in such way as was expressly authorized.

The code was adopted in 1863, and § 1773 of the edition of 1867, § 1783 of the edition of 1882, provides as follows: "The

wife is a *feme sole* as to her separate estate, unless controlled by the settlement. Every restriction upon her power in it must be complied with; but while the wife may contract, she cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void." While before this enactment a married woman could bind her separate estate for her husband's debts if she held the same free from restriction, the statute rendered that no longer possible, by imposing a restriction where none existed. But if an instrument settling property upon a married woman provides that she may pledge it for her husband's debts, there is nothing in the statute to prevent her from so doing.

It is not wrong in itself for a wife, of her own free will, to devote her separate property to the relief of her husband. Obedience to the dictates of duty, or even yielding to the impulses of affection, has in itself no tendency to impair the happiness of the family but the contrary.

As remarked in *Sutton* v. *Aiken, Trustee*, 62 Georgia, 733, 741, "it is evident that it is not wicked or immoral for a wife to pay her husband's debts, nor has the general public an interest in her abstaining from so doing. The restraint imposed upon her by the law is solely for her benefit and well being. The rule is economical, not moral; and its policy is in favor of a class, and not of the public at large. True, the class is a numerous and important one, but married women cannot be said to constitute the public. The public justice, police, order, safety, revenue, health, religion, or morality is not involved in preventing wives from devoting their property to the payment of their husbands' debts."

Hence, while the State has seen fit to impose a restriction where the instrument of gift is silent, or the wife otherwise holds by an unqualified ownership, it does not follow that the statute can be extended, upon grounds of general public policy, to destroy a power expressly bestowed, and render property inalienable which the donor granted upon condition that it might be conveyed as specified. It is not to be assumed that

the State intended to discourage gifts to, or settlements upon married women by making it impossible for those who wish to give to effectuate their intentions in respect to the terms on which the property should be held and disposed of. .

The wife is "controlled by the settlement," not only as to compliance with "every restriction upon her power," but also as to every provision therein which enables her to act as prescribed, notwithstanding, except for such provision, she could not, under the statute, do that which as a *feme sole* she might do. The wife cannot bind her separate estate "by any assumption of the debts of her husband;" but the separate estate which she cannot thus bind is estate so settled to her sole and separate use as to be controlled without the concurrence of her husband; and where, by the terms of the instrument, his concurrence is essential to whatever is done, it is not so situated as to come within the intent and meaning of the statute.

The property in question belonged to Brodnax. He conveyed it to a trustee by an instrument which required his assent to any sale or mortgage, and provided that the property should be held free from his debts contracts and liabilities, except such incumbrances or liens as might be made thereon at the written direction of himself and his wife. Under such circumstances the statute cannot be availed of to invalidate these mortgages; and this disposes of the case, for the mortgages were, in our judgment, such incumbrances as Mrs. Brodnax had the power to direct jointly with her husband to be created.

The meaning of the clause of the deed bearing on this subject is, that while the property was to be free from the contracts, debts and liabilities, of the husband it might be specially subjected to encumbrance to secure some of his debts, upon the written agreement of both husband and wife to that effect. This exception cannot be rejected as inconsistent with the previous provision, for it does not go to destroy it. In the particular instances in which she might choose to join with Brodnax in doing what he had not reserved the legal right to demand, debts might be made a charge upon the property

which was otherwise to be held free from all his debts. And in this view it does not matter whether the debt secured was past due or not.

*The decree of the Circuit Court will therefore be affirmed.*