Argued 8 January; decided 5 February, 1900.

## FIRST NATIONAL BANK *v.* LEONARD.

[59 Pac. 873.]

POWER OF MARRIED WOMEN TO CONTRACT.—Under Hill's Ann. Laws, §§ 2992, 2997, 2998, empowering a wife to manage and convey her property to the same extent that her husband can his property, and providing that she may contract and incur liabilities, which may be enforced by or against her as if she were a *feme sole*, and repealing all laws recognizing civil disabilities as to her which are not recognized as to her husband, "except the right to vote," etc., a wife who joins her husband in a mortgage on his property to secure his debt, the mortgage containing a covenant on the part of both that they will pay the debt, is bound thereby, and a personal decree may be entered against her, enforceable out of her separate property. Since the enactment of these three sections, a wife may make contracts, incur liabilities, and suffer the consequences thereof, in all respects as if she were unmarried: *Knoll* v. *Kiessling*, 23 Or. 8, distinguished.

From Josephine : H. K. HANNA, Judge.

This is a suit by the First National Bank of Southern Oregon against Lawrence Leonard and wife to foreclose a mortgage executed by the defendants as husband and wife to secure the husband's note for $3,000, which mortgage contains the following covenant: "And the said Lawrence Leonard and Mary Ellen Leonard, his wife, their heirs, executors, and administrators, doth covenant and agree to pay unto the said party of the second part, its executors and administrators, or assigns, the sum as above mentioned." The consideration of the note comprises a prior indebtedness of the husband's, some $1,700 in amount, and cash advanced at the time of its execution, presumably to the husband, about $1,300. Prior to the execution of the note and mortgage, the wife was the owner of the land incumbered thereby, and the husband of other premises; but at the time of giving the mortgage the husband and wife exchanged deeds to the lands held by each, respectively, so that the mortgage covered his property only. The arrangement was a matter conceived wholly between them, and it is doubtful whether the plaintiff knew of it when the mortgage was delivered. From a decree against the husband alone, plaintiff appeals.                              Reversed.

For appellant there was a brief over the names of *Henry L. Benson* and *Robert G. Smith*, with an oral argument by *Mr. Smith.*

For respondent there was a brief over the name of *Hammond & Vawter*, with an oral argument by *Mr. Austin S. Hammond.*

MR. CHIEF JUSTICE WOLVERTON after stating the facts, delivered the opinion of the court.

The sole question presented is whether the said covenant for the payment of the debt constitutes such an undertaking on the part of the wife that a personal decree may be entered against her, enforceable against her separate property. The question is one susceptible of solution under the statutory provisions touching the rights and authority of a married woman to contract, and her ensuing liabilities. Our statute makes the following provisions as bearing upon the controversy, viz.: Sess. Laws, 1893, p. 170; Hill's Ann. Laws, § 2992 : "The property and pecuniary rights of every married woman at the time of her marriage, or afterwards acquired, shall not be subject to the debts or contracts of her husband, and she may manage, sell, convey, or devise the same by will to the same extent and in the same manner that her husband can property belonging to him." Hill's Ann. Laws, § 2997: "Contracts may be made by a wife, and liabilities incurred, and the same enforced by or against her to the same extent and in the same manner as if she were unmarried." Hill's Ann. Laws, § 2998 : "All laws which impose or recognize civil disabilities upon a wife which are not imposed or recognized as existing as to the husband are hereby repealed ; *provided*, that this act shall not confer the right to vote or hold office upon the wife, except as is otherwise provided by law ; and for any unjust usurpation of her property or natural rights she shall have the same right to appeal in her own name alone to the courts of law or equity for redress that the husband has." The section first quoted was originally adopted in 1878, but was amended in 1893 by eliminating therefrom the words "by gift, devise, or inheritance," following the word "acquired." The second section was adopted in

1878, and the third in 1880. As early as 1876 it was decided that the wife had the right to sell or mortgage her separate property for the payment of the husband's debts, under the law then in force, touching the right to acquire and hold a separate estate : *Moore* v. *Fuller*, 6 Or. 272 (25 Am. Rep. 524). And again, in 1881, it was held that the mortgage of the wife's separate property to secure the debts of the husband placed the property in the position of a surety or guarantor, and that it would be discharged by anything that would discharge a surety or guarantor personably liable : *Gray* v. *Holland*, 9 Or. 512. But in neither of these cases was the wife's personal liability upon an undertaking to pay the husband's debts presented or determined. It may be remarked, in passing, that separate property acts do not, in themselves, enable a married woman to make personal contracts. This may be regarded as settled law : 14 Am. & Eng. Enc. Law (1 ed.), 609. There can be no cavil touching the purpose of the sections of the statute alluded to. Under the common law, and even by earlier statutes, the wife was incumbered and hampered by many disabilities that did not subsist as it respects the husband, which grew out of the marriage relation. The design of the legislature undoubtedly was to remove these disabilities, and to place the wife upon an equal footing, as it respects the control and management of her individual or separate estate and property, and as it pertains to the right, power, and authority to contract and incur liabilities, with like responsibilities and obligations and amenable to like remedies for their enforcement as the husband.

By Section 2992, Hill's Ann. Laws, the wife is empowered and authorized to manage, sell, convey, and devise by will any property that she may have acquired from any source, in like manner and to the same extent that her husband can property belonging to him ; and

by section 2997 she may contract and incur liabilities, and the same may be enforced against her, as if she were unmarried, or occupying the position of a *feme sole*. A statute of similar import to section 2997, but not so strongly worded in favor of the wife's right to contract and incur liabilities, has received construction in North Dakota: *Colonial Mortgage Co.* v. *Stevens*, 3 N. D. 265 (55 N. W. 578). It declares that "either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried." The case which required its interpretation arose by the wife's signing a note as surety for and with the husband. To secure the note, a mortgage was given upon the husband's homestead. In neither the note nor the mortgage did the wife attempt to charge her separate estate with the payment of the debt, nor was it claimed that she otherwise involved her separate property. An action was brought against her on the note, and the defense interposed was that she was a married woman at the time she executed it, and was, therefore, not liable. It was held, however, that the execution of the note by her was an engagement or transaction respecting property, and that she thereby became amenable to the same remedial processes for the enforcement her husband was subject to. This ruling is in accord with the construction of a like statute adopted in California. It was said in *Goad* v. *Moulton,* 67 Cal. 536, 540 (8 Pac. 65, 66), "A promissory note is an engagement respecting property, which a married woman may make, though it can be enforced only as against her separate property: *Marlow* v. *Barlew*, 53 Cal. 456; *Alexander* v. *Bouton*, 55 Cal. 15. If Mrs. Moulton had been unmarried, she could have made a promissory note for the accommodation of her father without receiving any consideration for so doing, and the note so made, in the hands

of one who received it for value, would, beyond question, have been valid, and binding upon her, though the holder knew how and why it was made. But the fact that she was married does not at all change the rule or limit her power in this respect.'' So, in Maryland, under a statute which made it competent for a married woman to bind herself by a covenant in all deeds of real estate made to her running with and relating to such estate the same as if she were a *feme sole*, it was held, construing it *in pari materia* with a preceding section, which specially gave a right of action against the wife, but for another cause, that an action could be maintained against her upon such covenant. A court of equity, in affording relief against the separate estate of a married woman, does not proceed against her *in personam*, but against the estate or property only. But, notwithstanding, the court decided that ''the covenant creates a personal obligation, and the party making it is bound, not as a *feme covert*, but as if she were a *feme sole*. Any property that she may hold under the provisions of the code as her separate estate may be made liable for the satisfaction of any recovery that may be had on the covenant :'' *Worthington* v. *Cooke*, 52 Md. 297, 308.

As we have intimated, however, section 2997, by specific enactment, subjects the wife to the same remedies that it does the husband, and this is in accord with reason and justice. ''Increased rights bring increased responsibilities.'' Still, as though section 2997 was not sufficient to accomplish the full purpose of the legislature, and put in practical vogue the recent tendency and policy of the times, and thoroughly emancipate and disenthrall the wife from all civil disabilities that the marriage relation entailed upon her, and which did not exist as it respects the husband, except the right to vote and hold office, section 2998 was adopted at the succeeding session of the legisla-

ture, by virtue of which it was declared, in *King* v. *Voos*, 14 Or. 91, 98 (12 Pac. 284), that "the wife was released of all 'civil disabilities' not imposed upon the husband, except the right to vote." Later, in *Ingalls* v. *Campbell*, 18 Or. 461 (24 Pac. 904), it was determined that the civil disabilities of the wife were such as arose both under the doctrine of the common law, as well as by statute, whereby she was disendowed of her property, and was civilly disqualified from doing many acts that it was competent to do and perform when acting as a *feme sole*, and that the manifest object of the statute was "to repeal, not to modify or amend, all laws, whether common or statutory, which have the effect to impose or recognize such civil disabilities." We may therefore say with perfect confidence that, with these three sections upon the statute book, the wife can deal, not only with her separate property, acquired from whatever source, in the same manner as her husband can with property belonging to him, but that she may make contracts and incur liabilities, and the same may be enforced against her, the same as if she were a *feme sole*. There is now no residuum of civil disability resting upon her which is not recognized as existing against the husband. The current runs steadily and strongly in the direction of the emancipation of the wife, and the policy, as disclosed by all recent legislation upon the subject in this state, is to place her upon the same footing as if she were a *feme sole*, not only with respect to her separate property, but as it affects her right to make binding contracts ; and the most natural corollary to the situation is that the remedies for the enforcement of liabilities incurred are made co-extensive and co-equal with such enlarged conditions. We hold, therefore, that Mrs. Leonard is bound by the covenant in the mortgage the same as her husband, and that a personal decree may go against her, enforceable out of her separate property.

The cases of *Knoll* v. *Kiessling*, 23 Or. 8 (35 Pac. 248), and *Campbell* v. *Snyder*, 27 Or. 249 (41 Pac. 659), are cited as opposed to these views.   While somewhat analogous, they do not involve or present the identical question here involved.   In each of them the mortgage was given upon the wife's separate property.   In the former it was said : "A wife's covenants, where she binds her property as security for her husband's debts, should not be construed to create a personal liability beyond the value of her property mortgaged, unless she be a party to the contract of indebtedness, which in this case she is not."   In the case at bar the mortgage which contains the covenant was given upon the husband's property.   In neither of the cases cited did the court attempt to reason the question, while in the latter it was expressly reserved for re-examination should occasion demand ; but, in any event, they cannot be considered as authoritative or controlling in the present controversy.   A decree will be here entered in accord with the views herein expressed. ·                          REVERSED.