(October 2, 1917.)

MEIER & FRANK COMPANY, a Corporation, Respondent, v. ROSE MAY BRUCE, Appellant.

[168 Pac. 5.]

CONTRACTS—VALIDITY OF A MARRIED WOMAN'S CONTRACT—CONFLICT OF LAWS—PUBLIC POLICY—APPEAL AND ERROR.

1. In this state the common-law disability of married women to enter into contracts still remains except when the same has been removed by legislative grants of power.

2. The disability of married women to enter into contracts has not been removed in this state, except where the married woman contracts for her own use or benefit or in reference to the management and control or for the use and benefit of her separate property.

3. The common-law disability of married women to contract in the state of Oregon has been entirely removed. (*First Nat. Bank v. Leonard*, 36 Or. 390, 59 Pac. 873.)

4. A contract entered into by a married woman in the state of Oregon, while there domiciled and to be performed therein, is a valid contract, and must be enforced by the courts of this state.

5. There is nothing wicked or immoral or contrary to public policy in permitting a wife's separate property to become liable for the payment of her husband's debts or community debts; nor is there anything in the statutes to indicate that the public policy of the state would be violated by enforcing a valid contract made by a married woman in a sister state.

[As to law of the place as controlling the validity of a married woman's contract, see note in 46 Am. St. 448.]

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Chas. P. McCarthy, Judge.

Action on contract. Judgment for plaintiff. *Affirmed.*

Oppenheim & Hodgin, for Appellant.

It is nowhere alleged in the complaint that the debt sued upon was incurred for the use and benefit of the separate estate of the appellant. The failure to so allege is fatal; no recovery can be had against a married woman without such an allegation and proof thereof. (*McFarland v. Johnson,* 22 Ida. 694, 127 Pac. 911; *Bank of Commerce v. Baldwin,* 12 Ida. 202, 85 Pac. 497, 14 Ida. 75, 93 Pac. 504, 17 L. R. A., N. S., 676; *Strode v. Miller,* 7 Ida. 16, 59 Pac. 893; *Holt v. Gridley,* 7 Ida. 416, 63 Pac. 188; *Jaeckel v. Pease,* 6 Ida. 131, 53 Pac. 399; *Dernham v. Rowley,* 4 Ida. 753, 44 Pac. 643.)

Contracts such as are involved in this suit are governed by the *lex fori.* "The *lex loci contractus* governs as to the legality and construction of the contract, but the *lex fori* will not always enforce a contract because lawful where made. It will not be enforced by the courts of other states where the contract is against public morals or the public interest." (*Spearman v. Ward,* 114 Pa. St. 634, 8 Atl. 430.)

"The public policy of a foreign jurisdiction may prevent the enforcement of a contract which the parties had capacity to make by the law of the place where it was made." (Elliott on Contracts, sec. 1129.)

The leading cases upholding the law of the forum with respect to the disability of married women upon this theory of public policy are: *Armstrong v. Best,* 112 N. C. 59, 34 Am. St. 473, 17 S. E. 14, 22 L. R. A. 188; *Hayden v. Stone,* 13 R. I. 106.

Whether or not a contract is valid by the law of the place where it is made, a creditor is only entitled to the remedies allowed by the forum; and where, according to the laws of the forum, the separate property of a married woman is not subject to attachment, a foreign creditor will not be allowed any different or any greater remedy than a citizen of the

forum. (*Ruhe v. Buck,* 124 Mo. 178, 46 Am. St. 439, 27 S. W. 412, 25 L. R. A. 178; Minor on Conflict of Laws, p. 9, sec. 5 et seq.)

In all cases affecting the title to real property, either directly or indirectly, the law of the forum is the proper law. (5 R. C. L. 925, 926, 952; *Thurston v. Rosenfield,* 42 Mo. 474, 97 Am. Dec. 353; *Thompson v. Kyle,* 39 Fla. 582, 63 Am. St. 193, 23 So. 12; Bishop on Contracts, p. 573, sec. 1412.)

"The validity and effect of attachment proceedings must be determined by the laws of the state in which they are brought, provided that the property attached is within the jurisdiction of such state." (4 Cyc. 402.)

An attachment is a proceeding *in rem.* (*Potlatch Lumber Co. v. Runkel,* 16 Ida. 192, 18 Ann. Cas. 591, 101 Pac. 396, 23 L. R. A., N. S., 536.)

The rule that, if a certain right is given in one state as to property of a certain nature, comity requires that such right should be enforced in another state as to property of the same nature, is inapplicable to real property. (*La Selle v. Wollery,* 14 Wash. 70, 53 Am. St. 855, 44 Pac. 115, 22 L. R. A. 75; reversing 11 Wash. 337, 39 Pac. 663, 32 L. R. A. 73; *Swank v. Hufnagle,* 111 Ind. 453, 12 N. E. 303.)

"The capacity of a married woman to make contracts affecting her real estate must be determined by the law of the place where the real estate is situated." (*Cochran v. Benton,* 126 Ind. 58, 25 N. E. 870.)

Chas. M. Kahn, for Respondent.

In Oregon, all civil disabilities of a married woman are removed, and she is placed on an equal footing with her husband. (*First Nat. Bank v. Leonard,* 36 Or. 390, 59 Pac. 873.)

"The validity of the contract of a married woman is generally to be determined by the law of the state where it is made." (21 Cyc. 1311; *Armstrong v. Best,* 112 N. C. 59, 34 Am. St. 473, 17 S. E. 14, 25 L. R. A. 188.)

"A contract made in one state which binds the separate estate of a married woman can generally be enforced in another state according to the laws of the former state."

(21 Cyc. 1434; Wharton, Conflict of Laws, 3d ed., sec. 118; Minor on Conflict of Laws, sec. 72, p. 145; *Bowles v. Field,* 78 Fed. 742, 83 Fed. 886; Story on Conflict of Laws, 7th ed., sec. 103; *Baer Bros. v. Terry,* 108 La. 579, 92 Am. St. 394, 32 So. 353; *Young's Trustee v. Bullen,* 19 Ky. Law Rep. 1561, 43 S. W. 687; *Garrigue v. Kellar,* 164 Ind. 676, 108 Am. St. 324, 74 N. E. 523, 69 L. R. A. 870; *Clark v. Eltinge,* 38 Wash. 376, 107 Am. St. 858, 80 Pac. 556; *Robinson v. Queen,* 87 Tenn. 445, 10 Am. St. 690, 11 S. W. 38, 3 L. R. A. 214; *Thompson v. Taylor,* 66 N. J. L. 253, 88 Am. St. 485, 49 Atl. 544, 54 L. R. A. 585; *Benton v. German-American Nat. Bank,* 45 Neb. 850, 64 N. W. 227; *Baum v. Birchall,* 150 Pa. St. 164, 30 Am. St. 797, 24 Atl. 620; *Mayer v. Roche,* 77 N. J. L. 681, 75 Atl. 235, 26 L. R. A., N. S., 763; *First Nat. Bank v. Mitchell,* 92 Fed. 565, 34 C. C. A. 542; *Ross v. Ross,* 129 Mass. 243, 37 Am. Rep. 321; *Young v. Hart,* 101 Va. 480, 44 S. E. 703; *Bell v. Packard,* 69 Me. 105, 31 Am. Rep. 251; *Nichols v. Marshall,* 108 Iowa, 518, 79 N. W. 282.)

A contract is not necessarily contrary to public policy of Idaho merely because it could not validly have been made in this state. In order for one state to refuse to enforce the contracts of another, there must be something inherently bad about those contracts; something pernicious and injurious to the public welfare. (Greenhood on Public Policy, p. 46, Rule 64; *Sutton v. Aiken,* 62 Ga. 741; *Milliken v. Pratt,* 125 Mass. 374, 28 Am. Rep. 241; *International Harvester Co. v. McAdam,* 142 Wis. 114, 20 Ann. Cas. 614, 124 N. W. 1042, 26 L. R. A., N. S., 774.)

Contracts such as those sued upon are recognized as binding a wife's separate property even when brought in a state where the real property is situated, and where, under the laws of such state, the married woman could not enter into such contracts and bind her separate property. (Wharton, Conflict of Laws, 3d ed., p. 286, sec. 118c.)

RICE, J.—Upon the argument of this case, it was conceded that between the fourth day of March, 1911, and the 10th day of September, 1912, the appellant Rose May Bruce resided at

Portland, in the state of Oregon, with her husband.  During her residence in the state of Oregon respondent complains: First, that it sold and delivered to her and her husband certain family necessities, upon which a balance of $113.99 was still due and unpaid; second, that on the eighth day of August, 1911, in the state of Oregon, the said appellant with her husband executed a joint and several promissory note in the sum of $500, upon which a balance of $474.80 is still due and unpaid; third, that while appellant was in the state of Oregon she and her husband executed a joint and several promissory note in the sum of $250, which is still due and unpaid.  Both of the promissory notes last mentioned were payable at the Bank of Kenton in Portland, Or.  On the tenth day of September, 1912, the appellant abandoned her residence in the state of Oregon and took up her residence in Boise, Idaho.  On the sixth day of February, 1914, the respondent instituted an action against appellant in the district court for Ada county to recover the sums alleged to be due, and thereupon procured a writ of attachment to be issued against the property of the appellant in Ada county, Idaho. The appellant filed a general demurrer to each cause of action in that court, and also demurred specially upon several grounds, which although specified as error by the appellant were abandoned upon the argument and will not be discussed here.  Appellant also filed a motion to quash the levy of attachment, upon the ground that the property levied upon was her sole and separate property and not subject to be levied upon in this action, there being no allegation in the complaint that the indebtedness therein sued upon was incurred for the use and benefit of the defendant's separate estate or for her own use and benefit.  The trial court overruled the demurrers to the three causes of action presented to this court, and also the motion to quash the levy of the writ of attachment.  The case went to final judgment upon default of an answer, from which judgment this appeal is taken.

It will be conceded that if the contracts alleged in the complaint were executed within and governed by the laws of

the state of Idaho, they would be void. In the case of *Bank of Commerce v. Baldwin,* 12 Ida. 202, 85 Pac. 497, we find the following:

"It should be borne in mind that all our legislation with reference to contracts, powers and liabilities of married women must be viewed and construed as grants instead of restriction of power and authority to contract."

In other words, the common-law disability of a married woman to enter into a contract still remains except when the same has been removed by legislative grants of power, and it is held that such disability has not been removed except where the married woman contracts for her own use or benefit or in reference to the management and control or for the use and benefit of her separate property. We quote again from the case of *Bank of Commerce v. Baldwin, supra.*

"It follows from what we have already said that in order to bind Mrs. Bowers in this case it will be necessary for the plaintiff to show that the debt was contracted for the use and benefit of her separate property or for her own use and benefit, or in reference to the management, control or business transactions touching such property."

See the following cases: *Dernham v. Rowley,* 4 Ida. 753, 44 Pac. 643; *Jaeckel v. Pease,* 6 Ida. 131, 53 Pac. 399; *Strode v. Miller,* 7 Ida. 16, 59 Pac. 893; *Holt v. Gridley,* 7 Ida. 416, 63 Pac. 188; *McFarland v. Johnson,* 22 Ida. 694, 127 Pac. 911.

With reference to the power of a married woman to contract in the state of Oregon, we quote from the case of *First National Bank v. Leonard,* 36 Or. 390, 59 Pac. 873, as follows:

"We may therefore say with perfect confidence that, with these three sections upon the statute book, the wife can deal not only with her separate property, acquired from whatever source, in the same manner as her husband can with property belonging to him, but that she may make contracts and incur liabilities, and the same may be enforced against her, the same as if she were a *feme sole.* There is now no *residuum* of civil disability resting upon her which is not recognized as existing against the husband."

We have, then, a question whether a contract executed in the state of Oregon by a married woman, resident and domiciled in the state of Oregon, and to be performed in the state of Oregon, shall be upheld and enforced in the state of Idaho, although such contract would be invalid if governed by the laws of this state. On this question, under the conditions prevailing in this case, the current of authority is fairly uniform. 9 Cyc. 672, contains the following:

"The validity of the contract, that is, the question of whether the contract is a legal or an illegal one, is judged by the law on the subject in the state or country in which the contract is entered into, the general rule being that a contract good where made is good everywhere, and a contract invalid where made is invalid everywhere."

In Wharton on Conflict of Laws, 3d ed., 272, we find the following:

"Postponing for the present the discussion of the question whether the law of the place where a contract is made, or that of the place where it is to be performed, governs, when the two are opposed, it may be confidently asserted, as a general principle of international law, that, as between the law of the place where a contract is made and that of the place where a married woman is domiciled, her capacity to make a personal contract is governed by the former (*lex loci contractus*), rather than the latter (*lex domicilii*).

In the case at bar, however, the *lex loci contractus* and the *lex domicilii* of appellant coincide. In Minor on Conflict of Laws, at p. 144, we find the following:

"It may be regarded as certain that if the party enters into a contract in the state of his domicile, though the contract is to be performed elsewhere, the proper law governing his capacity to enter into the contract is the *lex domicilii*, no matter where the suit may be brought."

And again, at p. 145, of the same work is the following: "For these reasons, the general principle of private international law is that the capacity of the party to make a contract, whether executory or executed, is governed by the law of the actual (not the legal) situs of the contracting party

at the time he enters into the contract; or, to put it in different form, by the law of the place where the contract is entered into.

5 R. C. L. 931–934, contains the following: "Accordingly, a contract valid where made is, as a rule, valid everywhere, and a contract invalid where made is invalid everywhere; and its validity or invalidity so determined will generally be recognized wherever it is sought to be enforced, even though the law of the forum would have determined otherwise if applied. If the place where the contract is made is also the place where it is to be performed, there is ordinarily no doubt as to the application of the rule, for then the *lex loci contractus* and the *lex solutionis* are the same. The presumption in the absence of any indication to the contrary will always be that a contract is to be performed at the place where it is made."

In the case of *Milliken v. Pratt,* 125 Mass. 374, 28 Am. Rep. 241, Gray, C. J., begins his opinion with the following:

"The general rule is that the validity of a contract is to be determined by the law of the state in which it is made; if it is valid there, it is deemed valid everywhere, and will sustain an action in the courts of a state whose laws do not permit such a contract. (*Scudder v. Union National Bank,* 91 U. S. 406, 23 L. ed. 245.) Even a contract expressly prohibited by the statutes of the state in which the suit is brought, if not in itself immoral, is not necessarily nor usually deemed so invalid that the comity of the state, as administered by its courts, will refuse to entertain an action on such a contract made by one of its own citizens abroad in a state the laws of which permit it. *Greenwood v. Curtis,* 6 Mass. 358 [4 Am. Dec. 145] ; *M'Intyre v. Parks,* 3 Met. (Mass.) 207.) "

The case of *International Harvester Co. v. McAdam,* 142 Wis. 114, 20 Ann. Cas. 614, 124 N. W. 1042, 26 L. R. A., N. S., 774, appears to be in point in every particular. In that case it is said:

"A further rule is this: The doctrine that the law of the place of a contract governs as to its interpretation and validity applies to the capacity of the parties, including that of

married women, to bind themselves in the manner attempted. (Story on Conflict of Laws, secs. 103, 241; *Milliken v. Pratt,* 125 Mass. 374 [28 Am. Rep. 241].)''

From the same case we quote the following: ''The last rule that need be stated is this: A contract under the foregoing is not, necessarily, contrary to the public policy of a state, merely because it could not validly have been made there, nor is it one to which comity will not be extended, merely because the making of such contracts in the place of the forum is prohibited, general statements to the contrary notwithstanding. In *Milliken v. Pratt, supra,* the court remarked substantially, even a contract expressly prohibited by the statute of the state in which the suit is brought, if not in itself immoral (the term 'immoral' being used in the broadest sense), is not, necessarily, nor usually, deemed so invalid that the comity of the state, as administered by its court, will refuse to entertain an action under all circumstances to enforce it. There must be something inherently bad about it, something shocking to one's sense of what is right as measured by moral standards, in the judgment of the courts, something pernicious and injurious to the public welfare.''

There is nothing wicked or immoral or contrary to public policy in permitting a wife's separate property to become liable for the payment of her husband's debts or the community debts. (See *Brodnax v. Etna Ins. Co.,* 128 U. S. 236, 9 Sup. Ct. 61, 32 L. ed. 445; *Sutton v. Aiken,* 62 Ga. 733.) Nor is there anything in the statutes to indicate that the public policy of the state would be violated by enforcing a valid contract made by a married woman in a sister state. It was held in *Bank of Commerce v. Baldwin, supra,* that a married woman might mortgage or pledge her separate property to secure her husband's debts or the community debts. Sec. 2685, Rev. Codes, is as follows: ''The separate property of the wife is not liable for the debts of her husband, but is liable for her own debts contracted before or after marriage.''

Sec. 4093, Rev. Codes, provides: ''A woman may while married sue and be sued in the same manner as if she were single; provided, that except in actions between husband and wife

the husband shall not be chargeable in any manner with his wife's costs or other expenses of suit.''

Sec. 4477, Rev. Codes, reads in part as follows: ''All goods, chattels, moneys and other property, both real and personal, or any interest therein of the judgment debtor not exempt by law, and all property and rights of property, seized and held under attachment in the action, are liable to execution.''

We are of the opinion, therefore, that the demurrer to the three causes of action herein mentioned was properly overruled by the trial court.

With reference to the order of the court dismissing appellant's motion to quash the levy of the writ of attachment, the record does not contain any authentication of the papers or files used by the trial court in acting upon the motion. The action of the court, therefore, cannot be considered on this appeal.

The judgment is affirmed.   Costs awarded to respondent.

Morgan, J., concurs.


BUDGE, C. J., Dissenting.—I am unable to concur in the opinion of my associates, and, in view of the fact that what I believe to be the settled policy of this state is being departed from, I shall state briefly my reasons for dissenting. I am not unmindful of the fact that the rule announced in the majority opinion has been announced in many jurisdictions and is sustained by respectable authority, but my examination of the cases has convinced me that there is no uniform rule, and I find that in many jurisdictions a different rule has been followed.

Under the common law, for reasons based upon public policy, a married woman could not contract. That policy, to my mind, is still a part of the common law and public policy of this state, except in so far as it has been encroached upon by legislative enactment. Under our statutes and the previous decisions of this court, a married woman's right to contract is limited absolutely to contracts for her own use or benefit, or in reference to the management and control or for

the use and benefit of her separate property, and that such is the public policy of this state will be readily seen from an examination of the Idaho decisions which have been collected and cited in the majority opinion. Such public policy may exist in the absence of a statute declaring it. We should not lose sight of the fact that the limitations above referred to relate solely to the capacity of a married woman to contract, and have no reference whatever to the status of her property or its liability to be subjected to the payment of any debt which she may lawfully contract. Sec. 2685, Rev. Codes, quoted in the majority opinion does not even purport to enlarge her capacity to contract, but merely renders her separate property liable for any debts which may be lawfully contracted by her, either before or after marriage.

I readily concede that as a general proposition in the conflict of laws and under the comity of states the *lex loci contractus* determines the contract and the *lex fori* determines the remedy, but, as Prof. Minor has clearly pointed out, there are the following well-defined exceptions to the rule: "(1) Where the enforcement of the foreign law would contravene some established and important policy of the state of the forum; (2) where the enforcement of such foreign law would involve injustice and injury to the people of the forum; (3) where such enforcement would contravene the canons of morality established by civilized society; (4) where the foreign law is penal in its nature; and (5) where the question relates to real property." (Minor on Conflict of Laws, sec. 5, p. 9.)

Referring to the case of *Milliken v. Pratt,* cited in the majority opinion, I desire to quote the following commentary thereon, taken from the note to *Locke v. McPherson,* 85 Am. St. 571, as follows: "Even this case, which seems to be a leading one, and which is cited in most of the later cases in that state and elsewhere, recognizes that where the incapacity of a married woman is 'the settled policy of the state, for the protection of its own citizens, that it could not be held by the courts of that state to yield to the law of another state in which she might undertake to contract.' The court sustained

the action because there was no reason of public policy in Massachusetts which would prevent its maintenance. We believe the better considered cases in general go no further than this—namely, that if the contract is void by the law of the married woman's domicile and opposed to the settled public policy of such state, the courts of the domicile will not enforce it, notwithstanding it was valid where made. The comity of a state does not go to the extent of enforcing rights prohibited by its law.''

It would seem that even the Massachusetts court has by later decisions limited the rule announced in *Milliken v. Pratt.* In *Mandell Bros. v. Fogg,* 182 Mass. 582, 94 Am. St. 667, 66 N. E. 198, that court held that, ''A statute of the state providing that the property both of the husband and of the wife shall be chargeable with the expenses of the family and the education of the children, and that in relation thereto they may be sued jointly or severally, will not be enforced in another state, though goods were bought on credit in the first named state by the husband when both he and his wife were temporarily therein.''

As I view the matter, it is against the settled policy of this state, as derived from the common law, which has been relaxed only in the particular above mentioned, to permit a married woman to enter into any contract except for her own use or benefit or in reference to the management and control or for the use and benefit of her separate property.

I agree with the majority opinion that there would be nothing inherently unjust in holding a married woman's property for her husband's debt, if such were the law, but until all common-law disabilities are removed, creditors of a married woman should occupy the same position, whether foreign or domestic, and it is not incumbent upon this court to extend the doctrine of comity to enlarge rights of a foreign creditor and thereby permit her separate property to be taken in satisfaction of a community debt.

I am unable to see where the enforcement of this contract would contravene any of the canons of morality recognized in this state, but as pointed out by Prof. Minor in the quota-

tion hereinbefore set forth, ''where the enforcement of the foreign law would contravene some established and important policy of the state of the forum,'' the law of the forum forbids the enforcement of the foreign law. And this exception is just as clearly defined, just as well established, and supported upon as sound reason and eminent authority as the other exceptions to the rule that the *lex loci contractus* should obtain, which have been enumerated by Prof. Minor.

The question is: Can a judgment be recovered against a married woman and her separate property subjected to the payment of the same on a foreign community debt, when it must be conceded that a judgment could not be recovered against her, or her property subjected to the payment of a community debt, incurred in this state, where the action is brought? The remedy in favor of the foreign creditor is granted while the same remedy in favor of a resident creditor is denied. Under the holding in the majority opinion there could be no clearer illustration of the discrimination between the remedy granted to creditors than appears in the instant case. Respondent, a foreign creditor, is the assignee of a local creditor of appellant and her husband, who contracted a community debt while domiciled in this state and prior to their removal to the state of Oregon. The demurrer to the cause of action for this claim was sustained, for the reason that it was a community debt and not a debt incurred by her for her own use and benefit, or in connection with the management and control or for the use and benefit of her separate estate. Therefore, the domestic creditors had no remedy either against her personally or her separate estate. The foreign creditor might waive any claim against her husband and subject her separate estate to the payment of a like debt. Such a holding, in my opinion, is both contrary to the established public policy of this state and not in harmony with the legislative will.

As was said in the case of *Ruhe v. Buck,* 124 Mo. 178, 46 Am. St. 439, 27 S. W. 412, 25 L. R. A. 178: ''When this action was brought, this court had, by former decisions, held that a married woman could not be sued by attachment in an

action at law in Missouri.  No such remedy was available in our courts in favor of resident creditors.  Had any citizen of Missouri proceeded by attachment at law against this real estate on a contract made or to be performed in this state, no lien would have been created, and no valid judgment could have been rendered against Mrs. Buck. . . . . ''  So in this state this court has by a long and uniform line of decisions held, not only that a married woman can contract solely with respect to the matters above pointed out, but also that a complaint which fails to allege either that the debt was incurred for her own use and benefit or in connection with the management and control or for the use and benefit of her separate property does not state a cause of action.  To my mind this goes, not merely to her capacity to contract, but definitely limits the remedy which pretending creditors may seek to invoke against her.

In view of the fact that the complaint contained no allegation that the contracts sued upon were for her own use or benefit, or in reference to the management and control or for the use and benefit of her separate property, I think the demurrer should have been sustained, for the reasons above given.

Some of the other leading cases so holding are: *First National Bank v. Shaw,* 109 Tenn. 237, 97 Am. St. 840, 70 S. W. 807, 59 L. R. A. 498; *Armstrong v. Best,* 112 N. C. 59, 34 Am. St. 473, 17 S. E. 14, 25 L. R. A. 188; *Brown v. Dalton,* 105 Ky. 669, 88 Am. St. 325, 49 S. W. 443.

In my opinion, the demurrer should have been sustained and the judgment appealed from should be reversed.