## C. I. T. CORPORATION v. SANDERSON.

### No. 4119.

District Court, D. Idaho, E. D.

May 5, 1931.

See, also, 43 F.(2d) 985.

L. E. Glennon, of Pocatello, Idaho, for petitioner.

Ralph Albaugh, of Idaho Falls, Idaho, and Merrill & Merrill, of Pocatello, Idaho, for bankrupt.

CAVANAH, District Judge.

The petitioner, a creditor of Maude C. Sanderson, seeks a decree to adjudge her a bankrupt, and the case is now before the court again upon the evidence.

The questions now raised under the evidence by the bankrupt as to why she should not be adjudged a bankrupt are that she was at the time the acts of bankruptcy are alleged to have been committed a wage-earner, and therefore exempt from the operation of the bankruptcy law; that the contract of guaranty, signed by her, was not a California contract, but was either a Utah or an Idaho contract, and therefore she was not liable for the indebtedness of petitioner; that no act of bankruptcy was committed, for the reason that the property conveyed had no value at the time of the conveyance.

As to whether or not the bankrupt was exempt under the Bankruptcy Act depends upon her status as to occupation at the time the alleged acts of bankruptcy were committed. Was she, under the circumstances of the case, a bona fide wage-earner at that time? And, if so, she cannot be adjudged an involuntary bankrupt. A wage-earner, as defined by section 1 of the Bankruptcy Act, "shall mean an individual who works for wages, salary, or hire, at a rate of compensation not exceeding $1,500 per year." 11 USCA § 1. To bring a person within the meaning of the statute, it must appear that the earning of salary or wages is his paramount occupation, and is determined by the vocation of the individual when the act of bankruptcy was committed. Every individual who is paid a salary is not necessarily a wage-earner within the meaning of the law, for one who is engaged in some mercantile business might at the same time incidentally earn a salary, Carpenter et al. v. Cudd et al. (C. C. A.) 174 F. 603, 20 Ann. Cas. 977, and yet would not be a wage-earner within the meaning of the statute.

The evidence shows that the bankrupt was a married woman, residing with her hus-

band, and engaged with him in the business, known as the "Sanderson Motor Car Company," of purchasing, selling, and repairing automobiles at Idaho Falls, in the state of Idaho. She had an investment of $5,035 in the business, and one-eighth of the capital stock of the company in her own name; 59 shares of the 150 shares of stock issued to her husband were owned by the community, in which she was equally interested with him. She, her husband, and one Beamguard were the three persons actively in charge of the business. Her net worth outside of the business was $12,000. Various financial statements of the business of the company show that the business was large, and the net profits were in a substantial amount. She was helping keep the books, and was secretary, drawing a salary of $50 per month, and her husband was president, and had charge of the parts department and the repair shop of the company, receiving a salary of $125 per month. The salary she received of $600 a year was a nominal one, and, as her time was principally used with her husband in jointly carrying on the business, it would seem that the duties of secretary was not her paramount occupation. Under these circumstances, and others which appear in the record, she cannot be held to be a wage-earner in the sense of the statute. In re 'Wakefield (D. C.) 182 F. 247.

The next thought urged by the bankrupt, that the contract of guaranty is not a California contract, but either a Utah or an Idaho contract, and therefore under the laws of Utah and Idaho a married woman is not liable thereunder, was discussed in the decision of the court on motion to dismiss the petition. See C. I. T. Corporation v. Sanderson (D. C.) 43 F.(2d) 985, 986. And the rule of law there announced applies and governs the consideration of the evidence in that respect. It was there said that the one question then for decision was, "whether a contract signed by a married woman, resident and domiciled in the state of Idaho, and forwarded for acceptance and completion to the other party thereto in the state of California, shall be enforced in the state of Idaho, although such contract would be invalid if governed by the laws of Idaho. It seems settled under the laws of Idaho that the disability of a married woman to enter into contracts has not been removed except where she contracts for her own use or benefit or in reference to the management and control or the use and benefit of her separate property. Bank of Commerce v. Baldwin, 12 Idaho, 202, 85 P. 497; Meier & Frank Co. v. Bruce, 30 Idaho, 732, 168 P. 5. While under the laws of the state of California the rule is to the contrary, for a married woman there may bind herself by contract even though the transaction does not respect her separate property. California (Civil) Code, vol. 1, § 158; Wood v. Orford, 52 Cal. 412; Goad v. Moulton, 67 Cal. 536, 8 P. 63; Burkle v. Levy, 70 Cal. 250, 11 P. 643. And such is the case where she enters into a contract as surety or guarantor. Anderson v. Shaffer, 98 Cal. App. 457, 277 P. 185; Stafford v. Hill, 53 Cal. App. 337, 200 P. 33."

So that the inquiry under the evidence now is, Was the guaranty contract completed in either the states of Utah or Idaho, and not in the state of California, for its acceptance and delivery were essential to a meeting of the minds of the parties before the completed contract took place? If the contract was not completed until it was forwarded to, and accepted by, the petitioner in San Francisco, Cal., then its enforcement is governed by the laws of California, where a married woman can legally make such a contract as we are considering, and the test of the place of such a contract is as to the place at which the last act was done by either of the parties essential to a meeting of the minds.

The evidence discloses that the indebtedness of the bankrupt to the petitioner arises out of the liability as a guarantor on the written contract signed by her while she was residing in Idaho, in which she, with others, in consideration of an extension of credit to the Sanderson Motor Car Company, guaranteed the payment of all sums advanced by petitioner to that company. The instrument was in the first instance sent to the Sanderson Motor Car Company, addressed to it at Idaho Falls, and, after it was signed by her and three other persons in Idaho, guarantors, it was then received by Mitchell, the intermountain district manager of petitioner at Salt Lake City, Utah, who then sent it on with all of the other papers to the executive officers of petitioner at San Francisco, Cal., for acceptance or rejection, and it was there accepted by petitioner, who thereafter made advances to the Sanderson Motor Car Company in the sum of $17,429.32, which is unpaid by reason of the insolvency and inability of the Sanderson Motor Car Company to meet its financial obligations. All credit was established for all dealers by the petitioner, by its executive or finance committee at San Francisco, Cal., who had the sole authority to do so, and no privilege or authority to act

in extending credit was granted by petitioner to any of its other offices until the account had been approved by its executive officers, or finance committee, at San Francisco, Cal. The guaranty contract is in itself directed to the San Francisco office of petitioner, and was there finally accepted, which was necessary for its completion, thereby making it a contract entered into and governed by the laws of the state of California and binding upon the bankrupt.

This brings us to a consideration of the further contention of the bankrupt that there is no proof of an act of bankruptcy because the property conveyed by the bankrupt had no value. It appears that the bankrupt, when she was insolvent, and within four months preceding the filing of the petition, conveyed to Lula C. Maguire, her sister, certain interests in real property and received therefor the sum of $1,500, which she then paid to the Pacific Finance Corporation, a creditor. The property so conveyed had a value to the extent of $1,500, for the bankrupt received that amount as a consideration of the conveyance. The paying to the Pacific Finance Corporation of the $1,500, derived from the sale of an interest in her real property, granted a preference which was another act of bankruptcy.

On the record, the motions of the bankrupt to dismiss the petition will be denied.